[Crim. No. 15407. Second Dist., Div. Five. Apr. 28, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
HERBERT H. KOONTZ, Defendant and Appellant.

**COUNSEL**

Herbert H. Koontz, in pro. per., and Donald F. Roeschke, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jeffrey S. Wohlner, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**BRANDLER, J.*—**

### Statement of the Case

Defendant was charged by information with three counts of assault with a deadly weapon with intent to commit murder in violation of section 217 of the Penal Code and with three separately alleged prior convictions of burglary for which he had served separate terms of imprisonment. Defendant, represented by counsel, pleaded not guilty and denied the priors. After trial by jury defendant was found guilty of "assault with a deadly weapon to commit murder in violation of section 217, Penal Code," as to counts 1 and 2 and not guilty as to count 3. The jury likewise found the three prior burglary convictions to be true. Defendant's motion for a new trial and his application for probation were denied, and he was sentenced to state prison on counts 1 and 2, the court ordering those sentences to be served consecutively. Defendant appeals from the judgment.

### Statement of Facts

As to count 1, Jerry Lee Parker testified that on November 16, 1967, while at a bar, defendant placed his hands around Parker's arm and when asked to remove his hands, defendant did so. After eating a steak, Parker noticed defendant approach Mrs. Soldano with a gun in his hand, stating he wanted to speak to her, so Parker left the bar. He returned to the bar about 10 p.m. and left with Mrs. Soldano to take her home. They went to Parker's garage some three doors distant to get his car when he noticed that defendant had followed them to the garage. Defendant had a gun in his hand and from a distance of about 10 feet he said, "Hey you" and then shot Parker three times, through the left side of the ribs, the right hip and the back of the neck. Parker was hospitalized 47 days. One bullet was removed from his body; the bullet in the hip is still in his body.

Mrs. Soldano stated that while at the bar defendant, whom she had never seen previously, stated, "You just tell me what you want and I will get it for you" and that she told him that she wanted nothing and asked him to stop the conversation. She moved away from him two or three times but he continued to move and sit next to her, saying, "What do you want, Baby; just tell me what you want and I will get it for you." She spoke to the owner of the bar, Mr. Ralph Lincoln, stating she wanted a cab to go home, and the owner told her that he would have Jerry (Parker) take her home. Mrs.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

Soldano accompanied Parker to his garage, and as Parker started opening the garage door, defendant started shooting, and Parker shoved her so that she would not be hurt. Lincoln came running when he heard the shots and he grabbed Mrs. Soldano by the arm and said, "Let's go." After defendant shot Parker, he pointed the gun at Mrs. Soldano and said, "Keep walking, Broad." While she and Lincoln were walking to the bar, defendant kept walking across the street keeping the gun pointed at them, and then defendant ran toward the Royal Hotel.

Paul Paize, a special officer for the Merchants Dispatch, on hearing a shot ran to the area of the shooting and saw defendant shoot Jerry Parker as he was lifting up the garage door. When he hollered, defendant, who was holding on to Mrs. Soldano, turned the girl loose. He hollered "Halt," and defendant then broke and ran away as Paize fired at him.

Mr. Ralph Lincoln, owner of the bar, ran to Jerry Parker's garage when he heard some shots. Defendant approached him with a gun, stating, "Would you like some?" or "Do you want to get shot?"

As to count 2, J. W. Faggins, a resident of the Royal Hotel, which is located about one block from the Lincoln Bar, saw defendant about 11 p.m. on November 16, run across the street, grab a 23 year-old female, Tanya Barrie, by the arm and lead her into the hotel. He saw a shiny object in defendant's hand. He heard Henry Burns, who was sitting in the lobby of the hotel watching television, tell defendant to let the girl alone. Faggins told Burns that defendant had a gun and as Faggins was about to take Burns by the arm, defendant fired in the direction of Burns, who was unarmed, the bullet grazing Burns' shirt.

Harvey Thomas testified that defendant came into the hotel with a gun in his hand, stating, "Don't you know I killed someone and I can do it again," and he then fired at Burns.

Fred A. Glenn, acting manager of the Royal Hotel, saw defendant enter the lobby about 11:15 p.m. Defendant was directly behind Tanya Barrie as they entered the lobby. After defendant fired, Faggins and Burns ran out of the hotel door. Tanya Barrie went down to the floor, trying to hide. Defendant then stated to Thomas that he would kill him and Tanya if Thomas didn't let go of Tanya.

### Defendant's Testimony

As to count 1 defendant testified that while at the bar on November 16, Mrs. Soldano struck up a friendly conversation with him; that Jerry Parker, who evidently had been drinking, came over and when he put his arm around Mrs. Soldano, defendant told him to leave her alone. When this

happened a second time, Ralph Lincoln, the owner, told Parker to leave or there would be trouble. Defendant further testified that he left the bar about 10 p.m. when Parker said, "Well, come on outside; we will settle it outside"; that he put his arm around Parker and tried to calm him down; that Parker went to his garage and pulled a gun on him; that he fought to take the gun out of Parker's hand and it went off twice; that Parker hit him in the ribs and when Parker went down the gun was fired again and shot Parker in the shoulder; that he left and ran into Lincoln and Mrs. Soldano.

As to count 2, defendant testified that he met Tanya Barrie when trying to get away from the area where the shooting occurred; that he told Tanya that he had been in a fight, and she said he should not fight over a woman, and she suggested that they get a room; that he took her to the hotel; that inside the hotel, one of three or four Negro men in there hit him on the head, and as he was leaving, one shot him in the back; that he is white and that vile epithets were applied to him by the Negroes in the hotel lobby to which he replied in kind; that while in the hotel he did not take out the gun and wave it around in a threatening manner.

### Defendant's Contentions

Counsel for defendant raises only two questions on appeal, both involving errors in the giving of instructions: (1) the trial court erroneously instructed the jury that where a person seeks or induces a quarrel which leads to the necessity of self-defense, the right to stand his ground and defend himself does not immediately arise but he must inform his adversary of his desire for peace (CALJIC 623), but failed to instruct *sua sponte* that if defendant started a fight by means of a simple assault and this unlawful act is met by a counterassault of a deadly character from which he cannot safely extricate himself, defendant may safeguard his person by the use of deadly force without first informing his adversary of his desire for peace, and (2) the trial court erroneously failed to instruct the jury, *sua sponte,* that defendant could not be guilty of assault with intent to commit murder unless they found that had the defendant killed his alleged victim, he would have been guilty of murder as opposed to manslaughter.

### Contentions Raised by Defendant Personally

By letter dated July 31, 1969, defendant personally submitted the following additional contentions on appeal: (a) ineffective aid of trial counsel; (b) prior convictions not proved beyond a reasonable doubt; (c) prejudicial misconduct by the prosecution; (d) unnecessary delay in bringing appellant before a magistrate violated Penal Code sections 825 and 849; and (e) the

statute under which he was charged does not refer to the use of a deadly weapon.

### The Trial Court Properly Instructed the Jury That the Instigator of a Quarrel Must Inform His Adversary of His Desire for Peace Before Self-Defense is Available to the Instigator

Defendant urges that the court should have given the jury *sua sponte* an instruction along the lines of the rule laid down in *People* v. *Hecker,* 109 Cal. 451, 464 [42 P. 307], that whenever an accused has started a fight by means of a simple assault and his victim confronts him with a deadly assault from which he cannot safely extricate himself, the accused is permitted to safeguard his person by means of a deadly force without first informing his opponent of his desire for peace.

The court gave numerous instructions dealing with the subject matter of self-defense,[1] including CALJIC 623, the giving of which defendant contends was error. ■ Since the jury was properly instructed on applicable rules of law dealing with self-defense, it was not necessary to restate the rule in another way.

In the case of *People* v. *Miceli,* 101 Cal.App.2d 643, 648 [226 P.2d 14], defendant argued that the court should have given an "instruction on its own motion to the effect that where the original assault was not felonious, and the counterassault was so sudden and perilous as to give the first assailant no opportunity to decline the struggle, he would be justified in slaying forthwith in self-defense."

In rejecting that instruction the court held on page 649: "The jury having been properly instructed on the law of self-defense, in the language of the code, the defendant should have proposed any amplification desired in a form that could be given."

### No Reversible Error Was Committed by the Trial Court in Failing to Instruct Sua Sponte as Contended for by Defendant

Defendant contends that the court erred when it failed to give an instruction *sua sponte* on manslaughter. ■ A trial court has the duty of instructing the jury on the general principles of law applicable to a case even though not requested, but it need not instruct on specific points developed at the trial unless so requested. ■ It is not incumbent on the trial court to anticipate every possible theory that may apply to specific facts and then instruct the jury accordingly. Only those principles of law which are directly connected with the facts of the case need be submitted to the

---

[1] CALJIC 606, 621, 624, 625-A, 625, 623.

jury by the court *sua sponte* if not requested by the defendant. *(People* v. *Crawford,* 259 Cal.App.2d 874, 877 [66 Cal.Rptr. 52]; *People* v. *Wade,* 53 Cal.2d 322, 334 [1 Cal.Rptr. 683, 348 P.2d 116]; *People* v. *Bronson,* 263 Cal.App.2d 831, 843 [70 Cal.Rptr. 162]; *People* v. *Chapman,* 261 Cal.App.2d 149, 174 [67 Cal.Rptr. 601].)

 Since defendant did not submit or request his desired instruction he is precluded from raising this point for the first time on appeal. *(People* v. *Miller,* 97 Cal.App. 179, 184 [275 P. 482].) Defendant contends that the requested *sua sponte* instruction can be placed in the category of instructions relating to diminished capacity thereby necessitating that such an instruction be given *sua sponte. (People* v. *Conley,* 64 Cal.2d 310, 319-320 [49 Cal.Rptr. 815, 411 P.2d 911].) The diminished capacity argument of defendant is completely without merit. No evidence was offered which even remotely suggests diminished capacity. Defendant, who testified in his own behalf, did not testify that he drinks or that he had any drinks that night. On the contrary his testimony was that the only reason he was in that bar was to deliver a package. In the absence, therefore, of any evidence even suggesting diminished mental responsibility there was no requirement that the court, *sua sponte,* give an instruction as suggested by defendant.

*None of the Contentions Personally Raised by the Defendant in His Letter to the Court are Meritorious*

(a) *Defendant Did Have Effective Representation by Counsel.* All of the contentions personally urged by defendant as evidencing want of effective representation by counsel are fully answered in the following cases: *People* v. *Kirchner,* 233 Cal.App.2d 83, 86 [43 Cal.Rptr. 218]; *People* v. *Hill,* 70 Cal.2d 678, 688 [76 Cal.Rptr. 225, 452 P.2d 329]; *People* v. *Brooks,* 64 Cal.2d 130, 139-140 [48 Cal.Rptr. 879, 410 P.2d 383]; *People* v. *Carreras,* 216 Cal.App.2d 807, 810 [31 Cal.Rptr. 436]; *People* v. *Garn,* 246 Cal.App.2d 482, 484 [54 Cal.Rptr. 867]; *People* v. *Avila,* 253 Cal.App.2d 308, 330-331 [61 Cal.Rptr. 441]; *People* v. *Stabler,* 202 Cal.App.2d 862, 863-864 [21 Cal.Rptr. 120]; *People* v. *Garrison,* 246 Cal.App.2d 343, 350-351 [54 Cal.Rptr. 731].)

 (b) *The Prior Convictions Were Properly Proved.* Defendant contends no fingerprints were attached to the prior records to match his own and that the "mug shot" did not resemble him. Defendant contends that the issue is one of identification.

 The question of identification is always one for the trier of facts *(People* v. *Clifton,* 248 Cal.App.2d 126, 130 [56 Cal.Rptr. 74]) unless the appellate court can say that there was no substantial evidence to support

the verdict. ■ People's exhibits 1, 2 and 3 relating to the three prior convictions were all certified and properly received in evidence. When defense counsel was asked by the court whether there was any objection to the exhibits, counsel replied: "No objections."

(c) *There Was No Prejudicial Misconduct by the District Attorney.* The record does not support defendant's contentions that the district attorney was guilty of prejudicial misconduct. (*People* v. *Lyons,* 50 Cal.2d 245, 262 [324 P.2d 556].)

(d) *The Right to be Taken Before a Magistrate Was Not Violated.* There was no unreasonable delay in taking defendant before a magistrate, and he was tried within the 60-day statutory period. (Pen. Code, § § 825, 849.)

(e) *Defendant Was Properly Convicted of Assault With a Deadly Weapon With Intent to Commit Murder.* Defendant contends that his conviction was improper because the statute under which he was charged and convicted does not refer to a "deadly weapon." He was charged with assault with a deadly weapon with intent to commit murder in violation of section 217 of the Penal Code. ■ The charge of assault with a deadly weapon (in violation of § 245, Pen. Code) is necessarily included in the offense of assault with a deadly weapon with intent to commit murder. (*People* v. *Nichelson,* 217 Cal.App.2d 273, 278 [31 Cal.Rptr. 750].) Defendant in the instant case could have been found guilty of the lesser offenses of misdemeanor assault, or felonious assault with a deadly weapon as these are necessarily included offenses. ■ Defendant, however, was found guilty and properly so of the offense charged, to wit, assault with a deadly weapon with intent to commit murder in violation of section 217 of the Penal Code.

The judgment is affirmed.

Kaus, P. J., and Reppy, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 24, 1970.