[Crim. No. 21871. Nov. 16, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE EDWARD FORD, Defendant and Appellant.

**COUNSEL**

Seymour I. Cohen, under appointment by the Supreme Court, and Dudley Gray for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Weisman and Robert R. Anderson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MOSK, J.—In *People v. Gould* (1960) 54 Cal.2d 621, 631 [7 Cal.Rptr. 273, 354 P.2d 865], this court held that in the absence of other evidence connecting the defendant with the crime, an extrajudicial identification that the witness cannot confirm by an identification at trial is insufficient to support a conviction. In *People v. Chavez* (1980) 26 Cal.3d 334, 364 [161 Cal.Rptr. 762, 605 P.2d 401], we held that such a pretrial identification may nevertheless be sufficient when it is made by a witness testifying under oath at the preliminary examination and there is evidence from which the jury could have credited that testimony over his trial testimony. In the case at bar we granted a hearing to consider whether *Gould* or *Chavez* applies when, at trial, the witness repudiates the identification testimony he gave at the preliminary examination.

We set forth the facts bearing on that issue. Defendant was convicted of six counts of armed robbery, and of being an ex-felon in possession of a concealable firearm. In count III he was charged with the armed robbery of Walter Lane on August 12, 1978. Lane, a merchant, was the sole witness to the crime. He testified that on the day in question two men and a woman entered his shop; the woman and one of the men browsed in the front of the store, while the other man went to the rear and into a small office. Lane followed him and found the man pointing a gun at him. The man ordered Lane to lie on the floor, empty his pockets, and remove his ring. After taking his valuables the man asked Lane where the safe was, and Lane replied there was none. While he was in the office, Lane heard someone emptying a change container located on the front counter; when the intruders left, the change was missing. Throughout these events Lane had ample opportunity to observe the man who robbed him.[1]

A week or 10 days after the robbery Lane was shown a group of photographs by the police, and picked out defendant as the robber. He again identified defendant in the courtroom at the preliminary hearing. At trial, however, Lane testified he could not identify defendant as the

---

[1]Shortly before the robbery Lane was standing in front of his store when he saw the man in question walk past him on the sidewalk at a distance of three feet. A few minutes later the man entered Lane's store with his companions, and Lane observed them while they conversed about his wares. Although the light was not turned on in the inner office in which the robbery took place, the room was small and was adequately illuminated by the store lights shining through a filigreed partition. The robbery took several minutes, and the man wore neither mask nor disguise. Finally, as he was leaving the store the man looked back, and Lane saw him again from a distance of about 10 feet.

man who had robbed him; the most he would say was that defendant looked like the man in the police photograph he had selected earlier.

Invoking the *Gould* rule, defendant contends the evidence is insufficient to support his conviction of the Lane robbery because the sole witness thereto was unable to identify him at the trial. (See also *In re Johnny G.* (1979) 25 Cal.3d 543 [159 Cal.Rptr. 180, 601 P.2d 196]; *In re Eugene M.* (1976) 55 Cal.App.3d 650, 657-659 [127 Cal.Rptr. 851].) The Attorney General, in turn, relies on *Chavez*.

In *Chavez* the defendant was convicted of three counts of assault by force likely to cause great bodily harm, and the jury further found that he used a gun in each assault. The sole witness on the latter issue, Gregory Angel, denied at trial that he had seen defendant fire the gun. The prosecution then introduced pretrial statements to the contrary by Angel, to wit, extrajudicial statements he made to the police and his testimony at the preliminary hearing identifying the defendant as the gunman.

Upholding the use findings, this court distinguished *Gould* on two grounds. (26 Cal.3d at p. 364.) Primarily, we stressed that the jury "had before it a transcription of Angel's positive identification of defendant under oath at defendant's preliminary examination." We noted that such identification had not been "shaken or discredited by cross-examination" at the preliminary hearing; and we concluded, "This sworn testimony at a formal, judicially conducted preliminary examination clearly provides a more substantial basis for the firearm use finding than the extrajudicial identifications in *Gould*" and its progeny.

In addition, we pointed to evidence in the record from which the jury could have chosen to discredit Angel's trial testimony in favor of his preliminary hearing testimony. Although Angel was never asked to explain the inconsistency between those stories, the jury could have found that Angel was reluctant to testify against the defendant at trial.[2]

In the case at bar, as in *Chavez*, the jury had before it a positive identification of defendant given by a witness under oath at an adversary judicial proceeding: the prosecutor read to the jury those portions

---

[2]During the investigation Angel told the police he did not want to go to court because no one had been hurt, and prior to trial he told the prosecutor he did not want to testify and would rather take care of the matter "on the street."

of the transcript of Lane's testimony at the preliminary hearing in which he identified defendant as the robber. Also as in *Chavez*, that testimony was not weakened in any way by cross-examination at the preliminary hearing. In contrast to *Chavez*, however, here the witness *was* asked at trial to explain why he identified defendant in his preliminary hearing testimony; he did so, and in effect repudiated that testimony. As will appear, we hold this to be a distinction without a difference.

To begin with, in the circumstances of this case the repudiation itself provided the jury with a basis on which it could have discredited Lane's trial testimony in favor of his preliminary hearing testimony. Lane gave two different explanations of the latter testimony, and each could have aroused the jury's suspicions. First, under questioning by the court Lane claimed he positively identified defendant at the preliminary hearing only "Because the judge told me I had to make a definite decision. She said I couldn't say 'looked like,' I had to say yes or no. In my mind I wasn't completely decided whether that was the man or not." Second, under cross-examination by defense counsel Lane denied he had identified defendant as the man who had robbed him, and claimed he meant only to say that defendant resembled the police photograph he had previously selected. But not only did these claims seem inconsistent with each other, they were apparently refuted by the transcript of the preliminary hearing read to the jury: from that transcript the jury could have found that the magistrate did not in fact coerce Lane into making a positive identification against his will, and that the identification was not in fact based on the photograph of defendant but on Lane's recollection of the actual events "at the time of the robbery."[3] And from

---

[3]The following colloquy at the preliminary hearing was read to the jury:

"Q. [by the prosecutor] I would like you to look around the courtroom and tell us if you see the man who was holding that gun in the courtroom right now.

"[Objection by defense counsel.]

"THE COURT: The man who was holding the gun on you at the time of the robbery.

"THE WITNESS [Lane]: That's him right there.

"THE COURT: Did you see his face?

"THE WITNESS: Yes, I do.

"THE COURT: Do you have a clear recollection of what his face looked like?

"THE WITNESS: Yes, I do.

"THE COURT: Do you see him in the courtroom?

"THE WITNESS: Yes, I do.

"[Objection overruled.]

"THE COURT: ... Will you identify the person you say you saw from your recollection at the time of the robbery?

"THE WITNESS: That is the gentleman over there [pointing to defendant]."

these findings the jury could well have inferred, as in *Chavez*, that the reason for the witness's failure to make a positive identification at trial was simply that in the interim he had become reluctant to testify against this defendant. Indeed, the evidence reveals that defendant and his wife had a discussion with the witness prior to trial.

Moreover, even if Lane's explanation of his testimony at the preliminary hearing had been plausible, the jury was not bound to believe it and disbelieve his prior testimony: inconsistencies in identification evidence are for the jury to resolve. (See *People* v. *Farrington* (1931) 213 Cal. 459, 463 [2 P.2d 814]; *People* v. *Koontz* (1970) 7 Cal.App.3d 30, 37 [86 Cal.Rptr. 374]; *People* v. *Blackwell* (1967) 257 Cal.App.2d 313, 319-320 [64 Cal.Rptr. 642], and cases cited.) As we reiterated in *Gould* (at p. 631 of 54 Cal.2d), "the probative value of an identification depends on the circumstances under which it was made." The pretrial identifications found wanting in *Gould* and its progeny were each made, as we stressed in *Chavez* (at p. 363 of 26 Cal.3d), in circumstances that cast serious doubt on their accuracy and trustworthiness.[4] Here, by contrast, Lane's positive identification of defendant was made in a formal judicial proceeding, under oath and subject to cross-examination. These are traditional indicia of reliability, and satisfy the concerns underlying the *Gould* rule. ■ It follows that even if it is repudiated at trial, a pretrial identification made in sworn testimony subject to cross-examination in a formal judicial proceeding is sufficient to support a conviction. (See, e.g., *People* v. *Green* (1971) 3 Cal.3d 981, 991 [92 Cal.Rptr. 494, 479 P.2d 998].)[5] ■ Defendant's claim of insufficiency of the evidence to support his conviction on count III is therefore untenable.

We have reviewed defendant's remaining contentions. They present no new and important issue of law, and were correctly resolved by the Court of Appeal when the case was before that court. For the reasons stated by the Court of Appeal, we therefore hold each of these contentions to be without merit.

■ This disposition, which in effect incorporates by reference a portion of the Court of Appeal opinion, does not contravene our well-

---

[4]In *Gould* the prior identification was made solely from a small group of photographs; in *Johnny G.* it was made on the street while the witness-victim was dazed from a vicious assault; and in *Eugene M.* it was made under police threats to charge the witness with murder, and was confused with his narrative of another crime.

[5]A preliminary hearing, of course, is not the only such proceeding: a prior trial in the same or a related prosecution would also qualify.

settled rule that an order granting a hearing and transferring a cause to this court operates to nullify the opinion and decision of the Court of Appeal. As we explained in a leading case on the subject, *"without some further express act of approval or adoption of said opinion by this court*, that opinion and decision are of no more effect as a judgment or as a precedent to be followed in the decision of legal questions that may hereafter arise than if they had not been written." (Italics added.) (*Knouse* v. *Nimocks* (1937) 8 Cal.2d 482, 483-484 [66 P.2d 438].) It is in the exercise of that power of express "approval or adoption" that in appropriate cases we have adopted as the opinion of this court all or part of a superseded Court of Appeal opinion (see, e.g., *Doers* v. *Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180 [151 Cal.Rptr. 837, 588 P.2d 1261]; *Agarwal* v. *Johnson* (1979) 25 Cal.3d 932 [160 Cal.Rptr. 141, 603 P.2d 58]), or have adopted without republication portions of such an opinion that resolve contentions presenting no new and important question of law (*People* v. *Collie* (1981) *ante* pp. 43, 64 [177 Cal.Rptr. 458, 634 P.2d 534]; *Highland Ranch* v. *Agricultural Labor Relations Bd.* (1981) 29 Cal.3d 848, 867 [176 Cal.Rptr. 753, 633 P.2d 949]; *People* v. *Meredith* (1981) 29 Cal.3d 682, 695 [175 Cal.Rptr. 612, 631 P.2d 46]; *People* v. *Scott* (1978) 21 Cal.3d 284, 297 [145 Cal.Rptr. 876, 578 P.2d 123]; *People* v. *James* (1977) 19 Cal.3d 99, 118 [137 Cal.Rptr. 447, 561 P.2d 1135]; see also *People* v. *Hidalgo* (1978) 22 Cal.3d 826, 828 [150 Cal.Rptr. 788, 587 P.2d 230].)

██  Nor, finally, does this disposition violate the constitutional mandate that decisions of this court and courts of appeal that determine causes shall be "in writing with reasons stated." (Cal. Const., art. VI, § 14.) Our reason for rejecting defendant's remaining contentions is that they were correctly resolved in the written opinion filed by the Court of Appeal in this case. A copy of that opinion, of course, was duly furnished to all parties herein, and remains available in the public records of this court and the Court of Appeal.

The judgment is affirmed.

Tobriner, J., Richardson, J., Newman, J., Work, J.,* and McClosky, J.,* concurred.

**BIRD, C. J.**—I must respectfully dissent for two reasons.

---

*Assigned by the Chairperson of the Judicial Council.

## I.

The majority in this case affirm a robbery conviction even though at trial no witness was able to identify appellant and the prosecution presented no independent evidence linking him to the crime.

In reaching this conclusion, the majority ignore a crucial aspect of this court's decision in *People* v. *Chavez* (1980) 26 Cal.3d 334 [161 Cal.Rptr. 762, 605 P.2d 401] which precludes application of the *Chavez* holding to this case.

Prior to *Chavez*, a line of cases stretching back over 20 years held that an extrajudicial pretrial identification was not sufficient evidence to uphold a conviction. (*In re Johnny G.* (1979) 25 Cal.3d 543 [159 Cal.Rptr. 180, 601 P.2d 196]; *People* v. *Gould* (1960) 54 Cal.2d 621 [7 Cal.Rptr. 273, 354 P.2d 865].)

In *Chavez*, this court found that a prior in-court identification could support a conviction where there was credible evidence that the identification was more trustworthy than the failure to identify at trial. The jury in *Chavez* was told that the witness had been reluctant to testify throughout the proceedings, and he had indicated that he preferred to settle the case "in the streets." *Chavez* distinguished *Johnny G.* and *Gould* on this basis, stating that the records in those cases "afforded no basis for concluding that the prior statement's probative value was any greater than the probative value of the witness' testimony in court." (*Chavez, supra,* 26 Cal.3d at p. 363.)

In this case, as in *Johnny G.* and *Gould,* the jury was given no evidence from which it could conclude that the identification at the preliminary hearing was more reliable than the witness' inability to identify at trial. In fact, the witness, Walter Lane, repudiated at the trial his prior identification and asserted that he had not meant to give a positive identification at the preliminary examination. He said that he had intended only to say that appellant looked like the photograph he had previously selected at a photographic display.

The majority assert that the transcript of Mr. Lane's identification at the preliminary hearing belies his claim that he had not intended to identify the appellant. Although his testimony on direct examination appears unequivocal, on cross-examination at the preliminary hearing he did indicate that he was identifying appellant as the man whose pho-

tograph he had selected.[1] This conforms to his explanation at the trial of his preliminary examination testimony.

In the final analysis, the witness' exact words at the preliminary examination are largely irrelevant. More important than the particular words used is his own explanation of what he was trying to say. Mr. Lane was a neutral citizen, a victim of a crime. His credibility was unimpeached. He asserted at trial that he was unable to identify appellant and had been unable to identify him at all stages of the proceedings. The witness had no motive to lie and every reason to assist the judicial system in apprehending the man who robbed him.[2]

On this record, there was absolutely no reason to disbelieve this unbiased witness, and no reason to trust the cold transcript of his preliminary hearing testimony rather than his insistent assertion at trial that he could not say that appellant was the robber of his store.

With no independent evidence to connect appellant with the robbery of Walt's Plant Store, no reasonable trier of fact could have concluded beyond a reasonable doubt that appellant had committed that crime. I would reverse the judgment on that count for insufficient evidence.

II.

I must also write separately to question whether this court has fulfilled its obligations under the Constitution of this state. The court is

---

[1]Mr. Lane was asked, "And you recognize this man as being the man who was depicted in the picture you saw; is that right?

"A. Yes.

"Q. Is that right?

"A. I recognize the man as what?

"Q. As being the man in the picture that you saw; is that correct?

"A. Yes."

[2]The record indicates that the day before Mr. Lane testified at trial he conversed with the appellant and appellant's wife in the hallway outside the courtroom. At oral argument, the Attorney General suggested that the jury might have concluded from this evidence that Mr. Lane had been intimidated, and that the jury therefore reasonably could have decided to discount his testimony at trial.

However, the transcript of Mr. Lane's trial testimony indicates that he described his encounter with the appellant in the most innocuous terms. He said, "I think everybody was talking. We were trying to get on the elevator to go down. Everyone that came down was full, so she [appellant's wife] said, 'You have to go up, probably, to get one going down.' [¶] We started to do that when we finally got one that was going down.

"Q. Did you go down in the same elevator as Mrs. Ford?

"A. Yes."

This was the total of Mr. Lane's description of his encounter with appellant.

required under article VI, section 14 to issue its decisions in writing with reasons.[3] When this court alludes to a nonexistent Court of Appeal opinion for the basis of its opinion, it is not giving to the litigants and the public a method by which they will be able to discern the decision and legal reasoning of this court. The Court of Appeal opinion was vacated when this court granted a hearing in this case. Yet, the majority opinion alludes to that nonexistent Court of Appeal opinion for a resolution of a number of issues raised by the appeal.

How can the public know what the other issues were and how they were decided? How do future litigants cite the decision in this case? These are but a few of the questions this new method of disposition raises.

Since the court is violating the strictures of the Constitution in adopting this procedure, I must respectfully disassociate myself from this questionable practice.

Appellant's petition for a rehearing was denied December 16, 1981. Bird, C. J., was of the opinion that the petition should be granted.

---

[3]Article VI, section 14 of the state Constitution provides in pertinent part, "Decisions of the Supreme Court and courts of appeal that determine causes shall be in writing with reasons stated."