[S.F. No. 24556. July 12, 1984.]

MARK W. KISBEY, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

**COUNSEL**

Hoberg, Finger, Brown, Cox & Molligan, Phillip E. Brown and David W. Moyer for Plaintiff and Appellant.

George Deukmejian, Attorney General, Michael Franchetti, Chief Deputy Attorney General, Willard A. Shank, Chief Assistant Attorney General, Marvin Goldsmith, Assistant Attorney General, James R. Schwartz and Dennis G. Fry, Deputy Attorneys General, George Agnost, City Attorney, John J. Taheny, Jr., Phyllis Walker and Philip S. Ward, Deputy City Attorneys, Gordon & Rees, Stuart M. Gordon, Michael T. Lucey, Carlos R. Hulse, Wagstaffe, Daba & Hulse, James B. Werner and Cesari, Werner & Moriarty for Defendants and Respondents.

**OPINION**

**KAUS, J.**—Plaintiff Mark W. Kisbey appeals three judgments in his personal injury action: (1) a judgment of nonsuit in favor of the City and

County of San Francisco (hereafter city); (2) a summary judgment in favor of defendant liquor stores and bars; and (3) a summary judgment in favor of defendant State of California. We granted a hearing mainly to determine whether a city, whose police officers stop a motorist but fail to detain him, is subject to liability to third persons injured by the motorist's ensuing negligent driving while trying to escape. We conclude that it is not.

I

San Francisco Police Officers Thelan and Camilleri testified that on July 11, 1973, about 10:30 p.m., they responded to an official police broadcast which indicated that a "serious disturbance, possibly a felony with chains," had taken place at a Texaco station at Stanyan and Geary. As the officers arrived at the station, a dark Ford left the premises without lights and entered the intersection against a red light. After confirming through a witness that the departing vehicle had been "involved" in the disturbance, the officers followed it west on Geary. The Ford, still without lights, was weaving through traffic. The officers reached the Ford at Fourth Avenue and, using lights and siren, were successful in stopping it as it turned right onto Fifth Avenue. They parked about a car's length behind the Ford and radioed police dispatch, indicating that a stop had been made. Both officers got out of their vehicle to investigate; their intention was to question the occupants of the Ford and to cite the driver for traffic violations. They did not know the exact nature of the occupants' involvement in the altercation at the station; they did not even know if the occupants were aggressors or victims.[1] The Ford's motor kept running. As the officers reached the front of the police car, the Ford started rapidly and fled the scene, leaving 12 feet of skid marks. About 7 to 10 seconds later, at the next intersection (Fifth and Clement), some 600 feet distant, the fleeing car, driven at a speed of 60 or 70 miles an hour, collided broadside with the vehicle in which plaintiff was riding. Lynch, the driver, was arrested for violations of the Vehicle Code. He was intoxicated.

The thrust of the plaintiff's case against the city was that the failure of the officers to detain and immobilize Lynch at Fifth and Geary breached a duty of care to plaintiff. It was argued that the officers did not follow the guidelines and procedures contained in the police department manual with

---

[1] As it turned out, Lynch, the driver, had been both aggressor and victim. He started the disturbance by insisting on $10 change for a $1 bill. Thereafter, fights erupted, during which Lynch was attacked with a chain and a fire extinguisher.

respect to vehicle stops.[2] The trial court, however, granted the city's motion for nonsuit.

## II

The issues with respect to the city are whether the officers owed a duty of care to plaintiff and, if so, whether the city is immune from liability.

In *Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 201-203 [185 Cal.Rptr. 252, 649 P.2d 894], we held that in cases posing these two questions, logic suggests that unless the first is answered in the affirmative, the second does not even arise. Nevertheless, since in this case our views on the issue of duty are highly diversified, but we are in general agreement that the officers' conduct, if negligent, was immunized by the Government Code, we base our affirmance of the judgment in favor of the city on the latter ground—suggesting, perhaps, that the life of the law is not logic, but expedience.[3]

## III

Government Code section 815.2, subdivision (a), provides that a public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment, if the act or omission would give rise to a cause of action against that employee. Plaintiff contends that the police officers' actions here were negligent ministerial acts for which the city may be held vicariously liable. The city, of course, denies negligence and claims that the officers' acts were discretionary.

We find it unnecessary to embroil ourselves in the "discretionary/ministerial" dichotomy which has dominated the application of Government Code section 820.2 (see *Johnson* v. *State of California* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352], and cases that followed) for, in our

---

[2]Various subsections of the manual describe procedures to be followed: (1) "for the purpose of stopping vehicles for traffic violation citations"; (2) "for the purpose of stopping a vehicle for a misdemeanor crime"; and (3) "for the purpose of stopping a vehicle when a known felony crime is involved." Plaintiff argued, of course, that the procedure mandated by his case was that pertaining to the felony crime stop. Expert evidence established, however, that the felony stop procedures assume that a "known felon" is in the vehicle.

[3]See *Ne Casek* v. *City of Los Angeles* (1965) 233 Cal.App.2d 131, 134 [43 Cal.Rptr. 294]: "The first question is whether, regardless of the official status of the defendants the complaint states a cause of action against the officers and hence, by the application of the doctrine of respondeat superior, against the city. The second question is whether or not the officers are protected by the so-called 'discretionary immunity' doctrine. *Since we feel that the answer to the second question is freer from doubt than the answer to the first and that it is in the affirmative, we do not reach the first.*" (Italics added.)

view, the officers and the city are immune under a specific immunity statute, section 845.8 of the Government Code, which has been interpreted as providing for an "absolute" immunity—one which applies to ministerial as well as discretionary acts. (*County of Sacramento* v. *Superior Court* (1972) 8 Cal.3d 479, 481-484 [105 Cal.Rptr. 374, 503 P.2d 1382].)

Subdivision (b) of section 845.8, as originally enacted (Stats. 1963, ch. 1681, § 1, p. 3279), provided merely that neither a public entity nor a public employee was liable for "any injury caused by an escaping or escaped prisoner." In *Ne Casek* v. *City of Los Angeles, supra,* 233 Cal.App.2d 131, the police had arrested two persons whom they handcuffed to each other. They tried to escape, colliding with the plaintiff as they ran down the public sidewalk. Doubtful that the term "prisoner" included a person merely under arrest, the court refrained from relying on section 845.8 but, instead, applied the discretionary immunity provided by section 820.2.

A few years later subdivision (b) was amended (Stats. 1970, ch. 1099, § 8, p. 1958) and now provides, as relevant: "Neither a public entity nor a public employee is liable for: . . . (b) Any injury caused by: (1) An escaping or escaped prisoner; (2) An escaping or escaped arrested person; or (3) A person resisting arrest." Comments of the California Law Revision Commission explain that the intent of the Legislature was to "extend the immunity to include persons resisting or escaping from arrest."

It seems clear that the purpose of the broadening amendment to subdivision (b) was to immunize public entities and employees from the entire spectrum of potential injuries caused by persons actually or about to be deprived of their freedom who take physical measures of one kind or another to avoid the constraint or to escape from it. It would plainly violate the legislative intent if particular words of the statute—such as "arrest" or "resisting"—were given such technical meanings that a case fell between the cracks of the immunity because, for example, the police had not intended a full arrest—as distinguished from a temporary detention—when the subject fled, or because at the time of the escape the process had not reached the point of physical control over the suspect.

We therefore conclude that this case falls squarely within the purview of the 1970 amendment to subdivision (b) of section 845.8.

## IV

Plaintiff also appeals summary judgments in favor of various liquor stores and bars and the State of California. The Court of Appeal addressed and

rejected claims of error with respect to those judgments when the case was before it, no additional arguments have been presented to this court, and for the reasons stated in the opinion of the Court of Appeal, we conclude that the contentions relating to the summary judgments lack merit. (See *People* v. *Ford* (1981) 30 Cal.3d 209, 215 [178 Cal.Rptr. 196, 635 P.2d 1176].)

Accordingly, the judgment of nonsuit in favor of the city and the summary judgments in favor of the other defendants are affirmed.

Mosk, J., Broussard, J., Reynoso, J., Holmdahl, J.,* and Low, J.,* concurred.

**BIRD, C. J.**—I respectfully dissent.

It is not disputed that the respondent officers had no intention of arresting the suspect whose negligent driving caused appellant's injuries. Nevertheless, the majority maintain that the respondents are immune from liability under a statute that provides immunity for injuries caused by ". . . [a] person resisting arrest." (Gov. Code, § 845.8, subd. (b)(3).)[1]

The majority have ignored the well-established principle that "[u]nless the Legislature has clearly provided for immunity, the important societal goal of compensating injured parties for damages caused by willful or negligent acts must prevail." (*Ramos* v. *County of Madera* (1971) 4 Cal.3d 685, 692 [94 Cal.Rptr. 421, 484 P.2d 93].)

I.

Contrary to Justice Kaus' opinion in this case, I would recommend to him for consideration one of his former opinions. I adhere to the wise principle, so aptly enunciated by my colleague in a previous opinion, that the question of duty logically precedes that of immunity. (See maj. opn., *ante*, at p. 418; *Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 201-202 [185 Cal.Rptr. 252, 649 P.2d 894].)

Though the question of duty must be determined case-by-case, the analysis must be governed by the general rule that all persons are required to use ordinary care to prevent others from being injured as a result of their conduct. (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36], citing *Hilyar* v. *Union Ice Co.* (1955) 45

---

*Assigned by the Chairperson of the Judicial Council.

[1]Unless otherwise noted, all statutory references are to the Government Code.

Cal.2d 30, 36 [286 P.2d 21].) The primary consideration in establishing a duty is the foreseeability of the risk: "The obligation turns on whether 'the offending conduct foreseeably involved unreasonably great risk of harm to the interests of someone other than the actor.'" (*Dillon* v. *Legg* (1968) 68 Cal.2d 728, 739 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].)

The record before us belies the respondents' claim that the risk of harm to a third-party motorist was not foreseeable. According to their own testimony, the officers had observed the suspects driving without lights, running a red light, and weaving through traffic immediately prior to the stop. More importantly, the officers had been informed by a witness that the suspects had just been involved in a "serious disturbance, possibly a felony with chains." Hence, the officers had ample reason to believe that the suspects might fear arrest and attempt to flee. It requires no leap of logic to recognize that fleeing suspects might drive at a high speed and thereby cause injury to an innocent third party. As this court has recognized, "[t]he risk of a high speed automobile chase is the risk of death or serious injury." (*Weirum* v. *RKO General, Inc., supra,* 15 Cal.3d at p. 48 [hereafter *Weirum*].)

In *Weirum, supra,* 15 Cal.3d 40, this court confronted a situation analogous to the present case. There, a rock radio station sponsored a contest in which listeners were rewarded for being the first to locate a mobile disc jockey. The plaintiff's husband died as the result of injuries suffered when his car was run off the road by two minors who were attempting to follow the disc jockey. (*Id.,* at p. 43.) The defendant radio station contended that it could not be held liable under the rule that an actor is entitled to assume that others will not act negligently. (*Id.,* at p. 47.)

This court held that the radio station owed a duty to the deceased driver. (*Id.,* at pp. 46-49.) In terms fully applicable to the present case, the court reasoned: "It is of no consequence that the harm to decedent was inflicted by third parties acting negligently. . . . If the likelihood that a third person may *react* in a particular manner is a hazard which makes the actor negligent, such *reaction* whether innocent or negligent does not prevent the actor from being liable for the harm caused thereby." (*Id.,* at p. 47, italics added.)

Respondents rely on *Davidson* v. *City of Westminster, supra,* 32 Cal.3d 197. In *Davidson,* the plaintiff was stabbed while in a laundromat that was under surveillance by police officers. The officers observed the assailant, whom they suspected of having perpetrated a similar attack on the previous evening, entering and leaving the laundromat several times. However, they did nothing to warn the plaintiff or to detain the assailant. (*Id.,* at p. 201.)

This court unanimously held that the officers owed the plaintiff no duty of care. (*Id.*, at p. 209.)

Respondents' reliance on *Davidson* is misplaced. In that case, the officers' conduct "did not change the risk which would have existed in their absence: There [was] simply no reason to speculate that anyone—[] victim or assailant—would have acted differently had the officers not placed the laundromat under surveillance." (*Id.*, at p. 208.)

By contrast, here liability was predicated not merely upon the officers' failure to intervene and restrain the suspects' conduct, but also on the officers' role in instigating the suspects' conduct. The officers' actions were sufficiently related to the suspects' conduct to establish a duty of reasonable care toward innocent third parties injured as a result of that conduct. (Cf. *Weirum, supra,* 15 Cal.3d at p. 49.)

Respondents also contend that the officers were not negligent and that their conduct did not cause appellant's injuries. However, negligence and causation are questions of fact for the jury. (See 4 Witkin, Summary of Cal. Law (8th ed. 1974) § 492, p. 2755, § 621, p. 2903, and cases cited.) A motion for nonsuit may properly be granted " ' " 'only when, disregarding conflicting evidence, and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff.' " ' " (*Warner* v. *Santa Catalina Island Co.* (1955) 44 Cal.2d 310, 316 [282 P.2d 12], quoting *Card* v. *Boms* (1930) 210 Cal. 200, 202 [291 P. 190].)

Under this standard, appellant has presented sufficient evidence of negligence and causation to raise issues of fact for the jury. On this record, reasonable jurors could find that the officers failed to exercise due care when they stopped the suspects without taking precautions against a possible high speed escape. Reasonable jurors could also conclude that the officers' conduct was both a cause in fact and a proximate cause of appellant's injuries. Had the officers not attempted to detain the suspects without guarding against a reckless escape, appellant might not have been injured. Further, the officers' conduct might have been a substantial factor in the suspects' decision to flee. In short, there is no reason why the factual issues of negligence and causation should not go to the jury.

Appellant has met his burden on the elements of duty, negligence and causation. Hence, it is necessary to decide the question of governmental immunity.

## II.

The majority hold that the defendants are immune from liability under section 845.8, subdivision (b). That section provides that neither a public entity nor a public employee is liable for "[a]ny injury caused by: (1) [a]n escaping or escaped prisoner; (2) [a]n escaping or escaped arrested person; or (3) [a] person resisting arrest."

It is well established that "'when there is negligence, the rule is liability, immunity is the exception.'" (*Johnson* v. *State of California* (1968) 69 Cal.2d 782, 798 [73 Cal.Rptr. 240, 447 P.2d 352], quoting *Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211, 219 [11 Cal.Rptr. 89, 359 P.2d 457].) Hence, unless the Legislature has conferred immunity in clear terms, the general policy of providing compensation for the victims of negligence must prevail. (See *Ramos* v. *County of Madera, supra,* 4 Cal.3d at p. 692.)

By its terms, the statute applies only to prisoners, arrested persons, or persons resisting arrest. (§ 845.8, subd. (b).) The parties to the present action have stipulated that the officers did not at any time prior to the accident attempt to place the suspects under arrest. Hence, the suspects did not fall into any of the categories covered by the statute. Any injuries resulting from their conduct were outside the terms of the immunity conferred.

The legislative history of section 845.8 does not reveal any indication that the Legislature intended to grant an immunity extending beyond the terms of the statute. Prior to 1970, public entities and employees were not liable either for injuries "caused by an escaping or escaped prisoner" (§ 845.8, subd. (b); Stats. 1963, ch. 1681, § 1, p. 3279) or for injuries "caused by the failure to make an arrest or by the failure to retain an arrested person in custody." (§ 846.)

In 1970, the Legislature amended section 845.8 to cover injuries "caused by . . . [a]n escaping or escaped arrested person; or . . . a person resisting arrest." (§ 845.8, subd. (b).) The California Law Revision Commission commented that the amendment extended immunity "to include persons resisting or escaping from arrest." At no time did either the Legislature or the Law Revision Commission suggest that the immunity was intended to cover persons who were merely detained or who were resisting a detention.

Nevertheless, the majority assert that it would "plainly" violate the legislative intent to read the statute literally. (Maj. opn., *ante,* at p. 419.) They cite no authority or legislative history in support of this proposition. Instead,

they simply assert that it would be illogical to confer immunity for injuries caused by escaping arrestees but not detainees.

There is nothing inherently illogical about providing immunity for some but not all activities relating to the detention and investigation of suspects. Indeed, many of the immunity statutes are narrowly drafted to immunize some but not all activities relating to a particular governmental function. (See, e.g., §§ 855.8 [diagnosing or failing to diagnose mental illness or addiction], 856.2 [escape of committed persons].)

The majority have simply elevated their own conception of logic over the plain wording of the statute. In so doing, they have—without any support from the legislative history or any other authority—given an immunity statute an expansive reading. I cannot concur in this unsupported departure from the well-established rule that victims of negligence must be compensated in the absence of a clear legislative grant of immunity. (See *Ramos* v. *County of Madera, supra,* 4 Cal.3d at p. 692.)

Respondents also contend that they are immune from liability under section 820.2, which provides immunity for "an injury resulting from [an] act or omission [that] was the result of the exercise of . . . discretion . . . whether or not such discretion be abused." (§ 820.2; see also § 815.2.)

The determination as to whether a particular act is discretionary within the meaning of section 820.2 turns on the distinction between "basic policy decisions" by a public entity and the "subsequent ministerial actions in the implementation of that basic decision." (*Johnson* v. *State of California, supra,* 69 Cal.2d at p. 797.) Basic policy decisions are discretionary and thus protected. Subsequent ministerial acts are not. (*Id.,* at pp. 793-798; see also *HFH, Ltd.* v. *Superior Court* (1975) 15 Cal.3d 508, 519 [125 Cal.Rptr. 365, 542 P.2d 237]; see generally *Williams* v. *State of California* (1983) 34 Cal.3d 18, 34-35 [192 Cal.Rptr. 233, 664 P.2d 137] (dis. opn. of Bird, C. J.).)

In the present case, the actions of the officers in stopping and failing to detain the suspects did not involve "basic policy decisions" of the San Francisco Police Department. Once the officers decided to investigate the reckless driving, their subsequent actions were purely ministerial in character. (See *Green* v. *City of Livermore* (1981) 117 Cal.App.3d 82, 89 [172 Cal.Rptr. 461] [once officers had decided to investigate drunken driver, their subsequent action of leaving two inebriated passengers with the car was ministerial]; cf. *McCorkle* v. *City of Los Angeles* (1969) 70 Cal.2d 252, 260-262 [74 Cal.Rptr. 389, 449 P.2d 453] [once officers had decided to investigate traffic accident, their subsequent actions were ministerial]; *Mann*

v. *State of California* (1977) 70 Cal.App.3d 773, 778 [139 Cal.Rptr. 82] [same].)

For all of the above reasons, respondents are not immune from liability under either section 845.8 or section 820.2.

### III.

In conclusion, appellant has met his burden on the elements of the cause of action in negligence. Respondents' claim of immunity fails since the officers' conduct does not fall within the terms of any statutory grant of immunity. In holding that respondents are immune from liability under section 845.8, the majority have ignored the plain wording of the statute, its legislative history, and the sound rule that statutes conferring governmental immunity should be narrowly construed.

The judgment should be reversed.[2]

Appellant's petition for a rehearing was denied August 9, 1984. Bird, C. J., was of the opinion that the peition should be granted.

---

[2]In addition, I oppose the majority's use of a nonexistent Court of Appeal opinion to resolve the issues relating to the summary judgments in favor of the various liquor stores and bars and the State of California. This procedure deprives the litigants and the public of a method for discerning the decision and legal reasoning of this court. (See *People* v. *Ford* (1981) 30 Cal.3d 209, 219 [178 Cal.Rptr. 196, 635 P.2d 1176] (dis. opn. of Bird, C. J.).)