[Civ. No. 3633. Fourth Dist. Jan. 31, 1947.]

LIONEL G. REED, Respondent, v. CITY OF SAN DIEGO, Appellant.

[Civ. No. 3634. Fourth Dist. Jan. 31, 1947.]

LORETTA CROFT, a Minor, etc., Respondent, v. CITY OF SAN DIEGO, Appellant.

J. F. DuPaul, City Attorney, J. H. McKinney, Deputy City Attorney, and Shelley J. Higgins, Special Counsel, for Appellant.

Gaines Hon, Joseph W. Jarrett, Robert M. Newell and J. Marion Wright for Respondents.

BARNARD, P. J.—These are actions for damages arising out of an automobile collision. After trial by a jury, judgments were entered against the defendant city, awarding the plaintiff Reed $37,500, and the plaintiff Croft $2,000. From these judgments the city has appealed. The cases were consolidated for the trial and on this appeal.

The accident occurred near midnight on July 18, 1943, on Rose Canyon Highway, which is a part of Highway 101 as it enters San Diego from the north. This is a divided highway with a concrete barrier in the center, leaving 23 feet on each side for northbound and southbound traffic, respectively. On the west side of the highway, at the place of the accident, there was a shoulder about eight feet in width. At the time, this area was included in a "dim out" zone under Army regulations, with the requirement that headlights of a very much reduced candle power be used.

On this night Reed was driving an automobile southerly toward San Diego. As he was traveling through Rose Canyon he saw some cars coming toward him with bright lights. Thinking he was out of the "dim out" zone he turned on his own bright lights. Shortly thereafter two police officers employed by the city of San Diego and engaged in traffic enforcement, approached from the north and sounded a siren. The police car also had a red light in front. Reed drove his car onto the shoulder and completely off the paved highway, and turned off his engine and lights. The police car was stopped about four or five feet behind Reed's car, but partly on the paved portion of the highway. It was parked slightly at an angle, the front end being farther to the left than the rear end, and there is evidence that about half of the police

car was on the pavement. The driver of the police car left his motor running but dimmed his headlights, stopped the siren and turned off the front red light. While the other officer sat in the police car, the driver got out and informed Reed that he was traveling in a "dim out" area with illegal lights. The police car remained in this position for some six or seven minutes. While the officer and Reed were standing between the two cars but off the pavement, the officer engaged in writing out a citation, a car driven by Ira Lester Croft, in which Loretta Croft was a guest, approached from the north with dimmed-out lights, traveling on the paved part of the highway. The right front part of his car struck the police car and knocked it forward against Reed's car, causing serious injuries to Reed and the officer, and also causing lesser injuries to Loretta Croft. Croft testified that he had been following a car with two taillights; that the bright lights of an approaching car obscured his vision for a moment; that he then saw the taillights on the police car but thought it was the other car in motion on the pavement; and that he discovered too late that it was stopped.

The appellant city contends that in thus stopping the police car its officers were acting within the exemption given operators of emergency vehicles by the Vehicle Code, and that under the facts here appearing it must be held, as a matter of law, that the city was not liable.

Under section 400 of the Vehicle Code liability is imposed upon a city for damage arising from the negligent operation of a motor vehicle by an officer or agent of the city acting within the scope of his employment. Section 454 then provided for an exemption from such liability with respect to emergency vehicles under the following conditions; said exemptions shall apply (a) when the vehicle is being driven in response to an emergency call or in the immediate pursuit of a law violator, and (b) only when the driver of such vehicle sounds a siren when reasonably necessary as a warning to others and at nighttime when the vehicle is equipped with at least one lighted lamp displaying a red light to the front. When these conditions were present the driver was not required to observe the regulations contained in chapters 6 to 13 of division 9 of this code, but it is then further provided that any such exemption shall not relieve the driver from the duty to drive with due regard for the safety of others using the highway, nor shall it protect the driver from the conse-

quences of an arbitrary exercise of the privilege thus granted. Section 582 of this code, which is found in chapter 13 of division 9, prohibits the standing or parking of a vehicle upon the paved portion of a highway, outside a business or residence district, when it is practicable to stop or park it off such paved portion.

The cases heretofore decided, with respect to the exemption thus granted, have involved emergency vehicles while moving through traffic in response to emergency calls or in immediate pursuit of law violators. While it might be arguable whether this exemption is applicable where the vehicle has stopped and the reasons for haste have ended, the trial court here held favorably to the appellant in this regard. On the theory that the officers were entitled to a reasonable time in which to complete the work of stopping and citing this offender, the court held that this was to be considered an emergency vehicle up to the time of the accident. The court instructed the jury that the mere stopping of this vehicle in this position for this purpose would not, standing alone, be evidence of, or support an inference of, an arbitrary use of the exemption given by section 454 from the duty of complying with sections 582 and 583. It then instructed the jury, in accordance with the limitations on the right to an exemption expressed in section 454, that before it could find the city liable it must find that the stopping of this car amounted *either* to a failure to drive with proper regard for the safety of others, defined as meaning without giving proper warning to others, *or else* to an arbitrary use of the privilege granted by section 454. The jury was then told that such arbitrary use could exist only if the use of the privilege amounted to willful misconduct, that is, if the officers acted intentionally with the knowledge that so stopping and permitting the car to remain on the highway would be likely to result in serious injury to others, or that they so stopped with a wanton and reckless disregard of the possible consequences of their act.

Relying on the rules expressed in *Lucas* v. *City of Los Angeles,* 10 Cal.2d 476 [75 P.2d 599], and *Raynor* v. *City of Arcata,* 11 Cal.2d 113 [77 P.2d 1054], the appellant contends that since the prohibition against stopping a car on the paved part of a highway is found in chapter 13, division 9 of the Vehicle Code the driver of the emergency vehicle was specifically excused from observing that rule of the road by the provisions of section 454; and that it follows that where ade-

quate warning was given stopping on this pavement in this manner was an act within the privilege given and not an act for the consequences of which a city could be held liable. It is then further argued that section 621, requiring a red light on the rear of any vehicle, is the only statutory requirement of a warning to those approaching from the rear; that this was held a sufficient warning even as to ordinary passenger cars in *James* v. *White Truck & Transfer Co.*, 1 Cal. App.2d 37 [36 P.2d 401]; that this police car, having two red taillights, complied with this requirement; that it follows, as a matter of law, that these lighted rear lamps constituted a sufficient warning to traffic approaching from the rear; and that no question of fact remained for the jury to decide, and no facts appear which would sustain a finding of liability against the city.

The exemption granted by section 454 is not absolute but is one based upon the conditions that the use of the vehicle be an emergency one, and that a warning be given. Under those conditions, the driver is not required to observe certain traffic regulations. It is then provided that this exemption shall not relieve from the duty to drive with due regard for the safety of others, and shall not protect the driver from the consequences of an arbitrary exercise of the privilege thus given. If it be assumed that this statutory exemption applies here, while the officers were completing the purpose for which the other vehicle had been stopped, the terms and conditions on which the exemption is granted would also apply. In the Lucas and Raynor cases, above referred to, it is said that the requirement to drive with due regard to the safety of others requires that a suitable warning be given. It is further said that an arbitrary exercise of the exemption privilege may not be predicated on speed or the failure to obey the ordinary rules of the road, standing alone, where a warning has been given. Accordingly, the trial court here submitted to the jury, with appropriate instructions and as questions of fact, the issues as to whether a suitable warning had been given and whether there had been an arbitrary exercise of the privilege claimed.

The appellant contends, however, that no warning was here necessary other than the ordinary taillight required for all cars, and that no unusual circumstances appear which would justify a conclusion that the stopping of this car in this position was an arbitrary exercise of the privilege granted.

In our opinion, a question of fact was presented in each of these respects.

The holding in the Lucas and Raynor cases is, in effect, that the duty to drive with due regard for the safety of others, as declared in section 454, requires the giving of a warning in order to give others an opportunity to protect themselves by yielding the right of way. It would seem that this must have been intended to refer to a warning which is suitable and adequate for that purpose, and not to the usual warning which all motorists must give under ordinary circumstances. In those cases, the cars in question were proceeding through traffic and the kind of warning required, the sounding of a siren, was clearly provided for in the statute. While the kind of warning required under the different circumstances here in question may not so clearly appear, the necessity for some suitable warning for the purpose of enabling others to protect themselves is just as apparent.

Although the situation here was quite different, the appellant contends that, since no form of warning was specifically required by any statute, the ordinary warning given by two taillights must be held sufficient, as a matter of law. This is opposed to the spirit of the statute granting the privilege claimed. That statute, while based on the necessity for such an exemption for emergency vehicles, also recognizes the need for, and was intended to require, a suitable warning in order to enable others to act in the interest of the safety of all concerned.

Strictly speaking, section 454 contained requirements or conditions for the exemption claimed which were not met by the appellant. At the time here in question that statute provided that ''Said exemptions shall apply only when the driver . . . sounds a siren as may be reasonably necessary as a warning to others and at night time when the vehicle is equipped with at least one lighted lamp displaying a red light to the front.'' If, as appellant claims, this exemption was applicable while this car was stopped in this position, these statutory conditions should also be applicable. While this car was equipped with such a lamp in front it is admitted that this red light was turned off when the car was stopped, some six or seven minutes before the accident occurred. Whether or not this requirement was intended for such a situation as this, and whether or not this failure to have such

a lamp "displaying a red light to the front" is controlling under the facts of this case it can hardly be doubted, as a practical matter, that if such a light had been burning, throwing a red glare over the car in front and the surrounding area, it would have furnished a much more suitable warning than was given by the two taillights which were similar to those on ordinary cars. And if no other warning was provided for, or practicable, it may have been reasonably necessary to sound the siren.

In any event, the rules laid down in the Lucas and Raynor cases do not go so far as to require a holding that no further warning was necessary under the circumstances which here appear. Nor do we think the holding in the case of *James* v. *White Truck & Transfer Co., supra,* is controlling. Here, the officers voluntarily and intentionally left this police car partially on the pavement when there was no necessity to do so, and when existing conditions presented an unusual hazard.

We are also unable to agree that no unusual circumstances here appear. This Rose Canyon highway runs downhill for several miles, with many curves and turns around the edges of the surrounding hills. This road and the traffic conditions thereon are well known to everyone in that vicinity and are such that no prudent motorist, who was not relying on a special privilege, would stop on the pavement even in broad daylight, when it was possible to avoid doing so. This was a "dim out" area and a motorist's vision would be greatly impaired. In coming downhill under such conditions, he would naturally rely on the fact that the paved road would be clear, especially since an unusually good shoulder was provided on which to stop. The weaker lights on his own car might not prevent him from seeing the taillights on a car ahead of him, but would restrict his vision and affect his ability to judge whether that vehicle was standing still or in motion. Moreover, with his vision thus restricted, a motorist might well think the diagonal position of the police car indicated that it was going around a curve. As a practical matter, under the conditions here at the time, the two taillights on the police car might well have been more of a trap than of a warning. The night was very dark, with the dim out and road conditions no one would expect a car to stop on the pavement, and the entire situation was not only unusual but one fraught with danger. In *Balthasar* v. *Pacific Elec. Ry. Co.,* 187 Cal. 302 [202 P. 37, 19 A.L.R. 452], it is said:

"Notice to the person required to yield the right of way is essential, and a reasonable opportunity to stop or otherwise yield the right of way necessary" in order to make the exemption applicable. It cannot be said, as a matter of law, that a reasonable opportunity was here given to others to yield the use of that part of the paved highway which was occupied by the appellant's car, or that these officers acted with due regard for the safety of others using this highway. That matter presented a question of fact which was properly left to the jury.

■ Nor can it be said, as a matter of law, that the conduct of these officers did not amount to an arbitrary use of the privilege claimed. That privilege is based upon the necessity arising from the nature of the duty required of the driver of an emergency vehicle. When, in performance of this duty, there is a need or necessity for him to violate certain traffic rules he may do so. When there is no such necessity the reason for the privilege ceases as, for instance, when a fire truck is returning from a fire or when a police officer is merely cruising. In such a case, where an emergency need does not appear, a use of the privilege may be arbitrary and a question of fact may be presented. (*Hopping* v. *City of Redwood City*, 14 Cal.App.2d 360 [58 P.2d 379].) While it was held in *Raynor* v. *City of Arcata, supra,* that where a warning has been given, an arbitrary exercise of the privilege cannot be predicated upon the elements of speed and failure to observe the rules of the road, standing alone, it was not expressly held that those elements may not be considered in connection with other elements or circumstances, one of which would naturally be the necessity for disregarding the rule of the road in question. In considering whether there has been an arbitrary use of the privilege the need or necessity at the time is an important factor, and it has been pointed out that the general principles applicable to that question are quite similar to those involved in the "willful misconduct" element in guest cases. (*Lucas* v. *City of Los Angeles,* 10 Cal.2d 476 [75 P.2d 599].)

In this case, the general situation with respect to this road, under "dim out" conditions, was well known to the officers and there was no need for the act which caused these injuries. The violator whom they were citing had stopped completely off the highway and was not trying to escape. There was ample room for the officers to have also so parked.

They left a large part of their car in a position where it was obstructing traffic on the paved highway, giving as a reason that they wanted it out there to serve as a barricade to protect them, while they were standing on the left side of the car they had stopped, from any motorist who might come along and otherwise hit them. This discloses that they fully realized the inherent and unnecessary danger in leaving the car in that position. Whatever may be the necessity for taking such steps in some cases, it clearly appears that it was unnecessary here, where there was ample room to park on the shoulder and still leave their car somewhat to the left of the other car. It is admitted that the car was intentionally left in this position and the evidence is sufficient to justify an inference that this must have been done with the knowledge that it was likely to cause an injury, or with what amounts to a reckless disregard of possible consequences. In view of all of these circumstances and considerations a question of fact was presented as to whether the attempted use of the privilege here claimed was not an arbitrary one.

It is next contended that this accident was the result of the intervening act of a third party which could not have been foreseen by the police officers. This was also a question of fact, and the controlling principle is whether the events which followed were reasonably to be anticipated. (*Newman* v. *Steuernagel*, 132 Cal.App. 417 [22 P.2d 780].) The evidence amply sustains the implied finding in this connection.

Several other points are raised by the appellant which require no consideration since they are based upon the main propositions above discussed. In its brief, the appellant "concedes that the verdicts were justified if the Court's version of the law applicable is correct."

Each of the judgments appealed from is affirmed.

Marks, J., and Griffin, J., concurred.

A petition for a rehearing was denied February 21, 1947, and appellant's petition for a hearing by the Supreme Court was denied March 31, 1947.