[No. S045633. Mar. 7, 1996.]

KAY MAUREEN LADD, a Minor, etc., Plaintiff and Appellant, v.
COUNTY OF SAN MATEO et al., Defendants and Respondents.

COUNSEL

Gerald A. Clausen, Abramson & Smith, Albert R. Abramson and Robert J. Waldsmith for Plaintiff and Appellant.

Thomas F. Casey III, County Counsel, Mary M. Ash, Deputy County Counsel, Boornazian, Jensen & Garthe, Charles I. Eisner and Jacqueline Jordan Leung for Defendants and Respondents.

OPINION

**GEORGE, J.**—We granted review in this case to decide an issue left unresolved by the decision in *Thomas* v. *City of Richmond* (1995) 9 Cal.4th 1154, 1158-1159 [40 Cal.Rptr.2d 442, 892 P.2d 1185]: whether the immunity provided public entities and employees by Government Code section 845.8, subdivision (b), from liability for any injury "caused by" an escaping prisoner applies when a prisoner injures herself during an attempted escape. For the reasons that follow, we hold that immunity does exist under such circumstances. We also hold that, unlike the situation underlying the court's decision in *Thomas* v. *City of Richmond, supra,* 9 Cal.4th 1154, 1165, the circumstances of the present case do not fall within the provisions of Vehicle Code section 17001, which imposes liability upon a public entity for an injury caused by its employee's negligent operation of a motor vehicle.

I

On March 12, 1991, San Mateo County juvenile hall employees Michelle Silveira and Aaron Turner were transporting 15-year-old plaintiff Kay Maureen Ladd to the San Mateo County juvenile hall. Plaintiff was a ward of the juvenile court who had been placed in the custody of her aunt but, having run away from her aunt's home, had been taken into custody by the Butte County Sheriff.[1] Silveira and Turner had taken custody of plaintiff at the Butte County juvenile hall, handcuffed her with her hands in front of her body, and placed her in the rear seat of a San Mateo County automobile. It was raining. When the vehicle stopped for a red traffic signal near some railroad tracks, plaintiff jumped out of the automobile and ran toward a slow-moving freight train. Despite being handcuffed, plaintiff tried to climb

---

[1]Plaintiff had been adjudged a ward of the juvenile court pursuant to Welfare and Institutions Code section 602, which states: "Any person who is under the age of 18 years when he violates any law of this state or of the United States or any ordinance of any city or county of this state defining crime other than an ordinance establishing a curfew based solely on age, is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court."

aboard a boxcar, but fell beneath the wheels of the train, resulting in the loss of both her legs.

Plaintiff sued San Mateo County and the county employees responsible for transporting her, alleging the county was negligent in failing to adequately train and supervise its employees and in failing to provide "adequate equipment and a security vehicle." Plaintiff further alleged that the county employees were negligent in failing to properly restrain and care for her, "so as to permit her to flee said automobile and board a moving railroad train." The superior court granted summary judgment in favor of defendants on the ground the county and its employees were immune from liability pursuant to Government Code section 845.8, which states that "[n]either a public entity nor a public employee is liable for: [¶] . . . [¶] (b) Any injury caused by: [¶] (1) An escaping or escaped prisoner," and section 846, which provides: "Neither a public entity nor a public employee is liable for injury caused by the failure to make an arrest or by the failure to retain an arrested person in custody."[2]

The Court of Appeal affirmed the judgment on the ground that defendants were immune from liability pursuant to section 845.8, without reaching the question whether defendants also were immune under section 846.

## II

"Conceptually, the question of the applicability of a statutory immunity does not even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity." (*Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 201-202 [185 Cal.Rptr. 252, 649 P.2d 894].) On occasion, however, we have proceeded directly to the question of immunity and have resolved the case on that basis. (*Kisbey* v. *State of California* (1984) 36 Cal.3d 415, 418 [204 Cal.Rptr. 428, 682 P.2d 1093].)

In the present case, we first briefly discuss whether defendants owed a duty of care to plaintiff to protect her from the injury in question. For the reasons that follow, however, we shall base our decision in this case upon the governmental immunity provided by section 845.8.

■ "The elements of a cause of action for negligence are well established. They are '(a) a *legal duty* to use due care; (b) a *breach* of such legal duty; [and] (c) the breach as the *proximate or legal cause* of the resulting injury.'" (*Evan F.* v. *Hughson United Methodist Church* (1992) 8

---

[2]All further statutory references are to the Government Code, unless otherwise indicated.

Cal.App.4th 828, 834 [10 Cal.Rptr.2d 748], italics in original.) Plaintiff asserts that defendants "were in a special relationship with [her] and thus had an affirmative duty to supervise, control and protect her."

"Liability for negligent conduct may only be imposed where there is a duty of care owed by the defendant to the plaintiff or to a class of which the plaintiff is a member. [Citation.]" (*J'Aire Corp.* v. *Gregory* (1979) 24 Cal.3d 799, 803 [157 Cal.Rptr. 407, 598 P.2d 60].) Assuming the correctness of plaintiff's argument that public entities and their employees have a duty to exercise reasonable care to prevent prisoners from escaping, we believe that such a duty would be owed to members of the public who might be injured by escaped or escaping prisoners, rather than to the prisoners themselves. (See *Duffy* v. *City of Oceanside* (1986) 179 Cal.App.3d 666, 671-672 [224 Cal.Rptr. 879] ["Putting aside questions of governmental immunity [citation], it seems pointless to argue that prison officials who negligently allow a dangerous felon to escape have no 'duty' to control the felon absent some previously identifiable victim the escaped felon will likely seek to harm."]; see also *People* v. *Laiwa* (1983) 34 Cal.3d 711, 726 [195 Cal.Rptr. 503, 669 P.2d 1278] ["by virtue of their office jailers have the general responsibility to prevent escapes . . ."]; *People* v. *Elmore* (1990) 225 Cal.App.3d 953, 959 [275 Cal.Rptr. 315] ["An abstract of judgment imposing a prison sentence is an order sending a defendant to prison and imposing a duty on the warden to carry out the judgment."]; Rest.2d Torts, § 319 ["One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."].) As a general matter, it would seem quite peculiar to conclude that such a prisoner is within the class of persons intended to be protected by a public entity's duty to prevent escapes, and we are unaware of any authority that has so held. (Cf. *Hoyem* v. *Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508, 514 [150 Cal.Rptr. 1, 585 P.2d 851] [the rule that students may not leave school premises without permission during regular school hours "is at least in part for the pupils' protection"].)

Plaintiff argues that different considerations should apply when, as in this case, the escaping prisoner is a minor. (See, e.g., *Hoyem* v. *Manhattan Beach City Sch. Dist.*, *supra*, 22 Cal.3d 508, 513 [school district may be liable for an injury suffered by a minor student after he left school grounds without permission, if a proximate cause of the injury was the district's failure to exercise ordinary care in supervising the student while he was on school premises].) Plaintiff, however, cites no case in which a public entity has been held liable where, as in the present case, an escaping minor is injured. (See Prosser & Keeton on Torts (5th ed. 1984) § 32, p. 179 [children are

responsible for their actions to the extent they are mature enough to have the capacity to "appreciate the risk and form a reasonable judgment"]; *Norfolk & Portsmouth Belt Line R.* v. *Barker* (1981) 221 Va. 924 [275 S.E.2d 613, 617] [10-year-old boy appreciated danger of jumping onto a moving train].)

We need not, and do not, decide in this case the novel question whether a *juvenile* prisoner is among the class sought to be protected by a public entity's (and its employees') duty to exercise reasonable care to prevent the prisoner from escaping (assuming such a duty exists), because, for the reasons that follow, we conclude that, in any event, under section 845.8 defendants in the present case are immune from liability. (See *Kisbey* v. *State of California, supra,* 36 Cal.3d 415, 418, fn. 3, quoting *Ne Casek* v. *City of Los Angeles* (1965) 233 Cal.App.2d 131, 134 [43 Cal.Rptr. 294], fn. omitted ["Since we feel that the answer to the second question [whether the defendants are immune from liability] is freer from doubt than the answer to the first [whether the complaint states a cause of action] and that it is in the affirmative, we do not reach the first."].)

Plaintiff also asserts that Vehicle Code section 17001 imposed a duty upon defendants to exercise due care in the operation of a motor vehicle. As we explain below, following our discussion of immunity, the duty imposed by that statute does not apply under the circumstances of the present case.

### III

Section 845.8 states: "Neither a public entity nor a public employee is liable for: [¶] . . . [¶] (b) Any injury caused by: [¶] (1) An escaping or escaped prisoner; [¶] (2) An escaping or escaped arrested person; or [¶] (3) A person resisting arrest."[3] The statute provides "an 'absolute' immunity— one which applies to ministerial as well as discretionary acts." (*Kisbey* v. *State of California, supra,* 36 Cal.3d 415, 419.) We held in *Kisbey* that the term "arrest" includes detentions as well, and we recognized that the statute was intended "to immunize public entities and employees from the entire spectrum of potential injuries caused by persons actually or about to be deprived of their freedom who take physical measures of one kind or another

---

[3]In granting summary judgment for defendants, the superior court impliedly found that there was no triable issue of fact regarding whether plaintiff, at the time of the incident underlying her present claim, was a prisoner or an arrested person within the meaning of section 845.8. Plaintiff has not challenged that aspect of the superior court's ruling, either in the Court of Appeal or in this court, and acknowledged at oral argument in this court that the applicable authorities suggest that plaintiff was a prisoner within the meaning of the statute. Accordingly, for purposes of this decision, we assume without deciding that plaintiff was a prisoner within the meaning of section 845.8. (See *Jiminez* v. *County of Santa Cruz* (1974) 42 Cal.App.3d 407, 409-410 [116 Cal.Rptr. 878].)

to avoid the constraint or to escape from it. It would plainly violate the legislative intent if particular words of the statute—such as 'arrest' or 'resisting'—were given such technical meanings that a case fell between the cracks of the immunity because, for example, the police had not intended a full arrest—as distinguished from a temporary detention—when the subject fled, or because at the time of the escape the process had not reached the point of physical control over the suspect." (*Ibid.*)

Plaintiff argues that "[b]y its plain language section 845.8 provides immunity only with respect to injury caused *by* a fleeing arrestee and *not* with respect to injury caused *to* him." (Italics in original, fn. omitted.) We disagree. Section 845.8 uses broad terms to provide immunity for "[a]ny injury caused by" an escaping prisoner. Nothing in the statutory language suggests an exception for injuries caused by a prisoner to herself. No apparent purpose would be served by such an exception.

The reasons for providing immunity for injuries caused by fleeing prisoners apply equally, or with greater force, to self-inflicted injuries. Had plaintiff injured a bystander during her attempted escape, it is clear that the immunity provided by section 845.8 would apply. (*Kisbey* v. *State of California, supra,* 36 Cal.3d 415, 419.) The reason for this immunity was explained by the Law Revision Commission comments made when the statute was enacted: "The extent of the freedom that must be accorded to prisoners for rehabilitative purposes and the nature of the precautions necessary to prevent escape of prisoners are matters that should be determined by the proper public officials unfettered by any fear that their decisions may result in liability." (Cal. Law Revision Com. com., 32 West's Ann. Gov. Code (1995 ed.) § 845.8, p. 461.)

The chilling effect upon law enforcement and custodial officers' performance of their duties that would result from the imposition of liability for a public employee's failure to maintain custody over a prisoner is the same whether that liability arises from an injury to a third party or an injury to the escaped or escaping prisoner. Further, it would make little sense to preclude an innocent bystander from recovering damages caused by a public employee's negligence in allowing a prisoner to escape, but permit the prisoner to recover damages resulting from a self-inflicted injury under the same or similar circumstances. Thus, for example, if plaintiff, while attempting to board the train, had caused a railroad worker to fall from the train, as well as herself, and both were injured, it would be anomalous to deny recovery to

the railroad worker, but allow plaintiff to recover damages for her self-inflicted injuries.[4]

■ Because the statutory language is clear, we need not resort to legislative history to discern the scope of section 845.8 in this regard. (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) But plaintiff places great significance upon the existence of other governmental immunity statutes appearing in the same part of the Government Code as section 845.8, such as section 844.6, which immunizes a public entity from liability both for an injury "caused by" any prisoner, as well as for an injury "caused to" a prisoner. (See also § 854.8, subd. (a) [providing governmental immunity for "(1) An injury proximately caused by a patient of a mental institution. [¶] (2) An injury to an inpatient of a mental institution."], and § 856.2 [providing governmental immunity for "(1) An injury caused by an escaping or escaped person who has been confined for mental illness or addiction. [¶] (2) An injury to, or the wrongful death of, an escaping or escaped person who has been confined for mental illness or addiction."].)

The circumstance that the Legislature has provided governmental immunity for injuries "caused to" certain classes of persons who escape, or attempt to escape, from governmental custody does not indicate an intent to restrict the common meaning of the phrase "caused by" (as used in section 845.8) to exclude self-inflicted injuries. In the statutes cited by plaintiff, the effect of providing immunity from liability for injuries "caused to" the escaped person, as well as immunity from liability for injuries "caused by" that person, is to broaden the immunity to apply to injuries caused *to* the escaped person *by the government or a third party*. The addition of the "caused to" language is not necessary to provide immunity from liability for injuries caused by the escaped person to herself, because such immunity already is provided by the provision in each of these statutes covering injuries "caused by" the escaped person.

Plaintiff's argument is inconsistent concerning the respective meaning of the statutory language providing immunity for injuries "caused to" persons in custody and injuries "caused by" such persons. Plaintiff correctly interprets the phrase "an injury to" an escaped person to include an injury that is "caused by" that person to him- or herself, but fails to apply the same logic

---

[4]Our holding regarding the application of section 845.8 is limited to circumstances similar to those involved in the present case, in which plaintiff alleges that defendants were negligent in allowing her to escape from their custody. We need not, and do not, decide whether the immunity provided by section 845.8 would apply in other circumstances in which it can be said that the escapee contributed to his or her injuries.

to conclude that the phrase an injury "caused by" an escaped person includes an injury that also is "caused to" that person by him- or herself. In the case of a self-inflicted injury, both phrases apply and either is sufficient, standing alone, to provide immunity.

Plaintiff relies upon the legislative history of the 1970 amendment to section 845.8.[5] Prior to the amendment, the statute applied only to injuries caused by escaping or escaped prisoners. The 1970 amendment expanded the scope of the immunity to include as well those injuries caused by escaping or escaped arrestees and persons resisting arrest. Plaintiff quotes a "staff analysis" prepared for the Senate Committee on the Judiciary that states that the proposed amendment "[e]xtends immunity to include persons resisting or escaping from arrest who cause injuries *to third persons*." (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 94 (1970 Reg. Sess.) p. 2, italics added.) This passing reference in a summary of pending legislation does not convince us that the Legislature intended to restrict the phrase "caused by" to exclude self-inflicted injuries. The 1970 amendment did not add or alter the phrase "caused by," which appeared in the statute as originally enacted. (Stats. 1963, ch. 1681, § 1, p. 3279.) Moreover, it is not surprising that the staff analysis of the 1970 amendment would focus upon the effect of the proposed amendment upon injuries caused to third persons by escaping or escaped persons, because this is the more common context in which the statute is applied.

Plaintiff also points out that the bill that amended section 845.8 in 1970 also amended section 856.2 to expand the immunity from liability for injuries "caused by" an escaping or escaped mental patient to include injuries "caused to" such patients. Plaintiff argues that the Legislature's failure similarly to amend section 845.8 evidences an intention to exclude injuries "caused to" escaping prisoners from the immunity provided by section 845.8. As explained above, however, the Legislature's decision not to extend the immunity provided by section 845.8 to injuries "caused to" escaping prisoners does not reflect an intent to restrict the immunity already provided for injuries "caused by" such prisoners, including injuries caused by escaping prisoners to themselves.

The Law Revision Commission Comment to the 1970 amendment of section 856.2 states that the purpose of immunizing the government from liability for injuries "caused to" escaping or escaped mental patients was to avoid the result reached in *Callahan* v. *State* (1943) 179 Misc. 781 [40

---

[5]Plaintiff requests that we take judicial notice of certain documents reflecting legislative history, and defendants have not objected. We grant plaintiff's request. (Evid. Code, §§ 452, subd. (a), 459, subd. (a).)

N.Y.S.2d 109, 113], and similar cases, in which the government was held liable for injuries suffered by patients who had escaped from mental institutions. (Cal. Law Revision Com. com., 32 West's Ann. Gov. Code (1995 ed.) § 856.2, p. 493.) As noted above, we are unaware of any case that has held that prisoners are among the class sought to be protected by a public entity's duty to exercise reasonable care to prevent a prisoner from escaping. The Legislature's purpose in extending the scope of the governmental immunity provided by section 856.2 to include all injuries suffered by escaped mental patients—to avoid the result reached in other states with regard to escaped mental patients—does not apply to injuries suffered by escaped prisoners.

■ We hold, therefore, that the immunity provided public entities and employees by Government Code section 845.8, subdivision (b), from liability for any injury "caused by" an escaping prisoner applies to a self-inflicted injury suffered by the prisoner.

IV

■ Citing our decision in *Thomas* v. *City of Richmond, supra,* 9 Cal.4th 1154, plaintiff further argues that section 845.8 does not provide immunity in the present case, because defendants are liable under Vehicle Code section 17001, which provides: "A public entity is liable for death or injury to person or property proximately caused by a negligent or wrongful act or omission in the operation of any motor vehicle by an employee of the public entity acting within the scope of his employment." Contrary to plaintiff's argument, the provisions of Vehicle Code section 17001 do not apply in the present case.

The alleged negligence of the county and its employees in failing to provide a secure vehicle, in failing adequately to restrain plaintiff with devices such as a waist chain or leg chains or to handcuff plaintiff's hands behind her, and in failing to have one of the county employees sit in the backseat with plaintiff to prevent her from escaping, does not constitute negligent or wrongful conduct or omissions in the operation of a motor vehicle within the meaning of Vehicle Code section 17001. For that statute to apply, it is not sufficient that a motor vehicle somehow be involved in the series of events that results in the injury. The injury must be proximately caused by the negligent "operation of a motor vehicle."

In *Chilcote* v. *San Bernardino County* (1933) 218 Cal. 444 [23 P.2d 748], a driver was injured when he lost control of his vehicle upon encountering large pools of oil on the highway. Plaintiff sued the county under a predecessor statute to Vehicle Code section 17001 (former Civ. Code, § 1714½),

alleging that the presence of the oil on the highway had been caused by the county's negligent operation of oil trucks. Noting that "it was the intention of the legislature to use the word 'operation' in its popular and ordinary sense as applied to motor vehicles," this court held that the statute did not apply. (*Chilcote* v. *San Bernardino County*, *supra*, 218 Cal. at p. 445.)

In *Greenberg* v. *County of Los Angeles* (1952) 113 Cal.App.2d 389, 390 [248 P.2d 74], plaintiffs alleged that the decedent, " 'stricken with a critical cardiac and diabetic condition,' " was placed in an ambulance to be driven to the hospital by a county employee. Rather than proceeding directly to the hospital, however, the driver drove to another location and picked up another patient—a course of conduct resulting in a one-hour delay in the arrival of the first patient at the hospital, during which time she died. Relying upon another predecessor statute to Vehicle Code section 17001 (former Veh. Code, § 400), the plaintiffs alleged that the decedent's death was caused by the " 'negligent operation of a motor vehicle' " by the ambulance driver. (*Greenberg* v. *County of Los Angeles*, *supra*, 113 Cal.App.2d at p. 390.) The Court of Appeal noted that "there is no negligence alleged other than the delay in getting decedent to the hospital" and observed it appeared that "the ambulance was driven with all due care." (*Id.* at p. 391.) The Court of Appeal concluded, therefore, that the complaint did not state a cause of action, because it "contains no language which can reasonably be interpreted as alleging anything ordinarily understood as 'negligent operation' of a motor vehicle." (*Ibid.*)

In *Bright* v. *East Side Mosquito etc. Dist.* (1959) 168 Cal.App.2d 7 [335 P.2d 527], the complaint alleged that employees of a mosquito abatement district released a chemical spray from a trailer being towed by a jeep near a public highway. The spray blanketed the highway, obscuring visibility and causing a multiple-vehicle collision in which the plaintiff was injured. The Court of Appeal held that a cause of action had been stated under one of the predecessor statutes to Vehicle Code section 17001 (former Veh. Code, § 400), because releasing the spray from a trailer being towed by a jeep in a manner that obscured visibility on the highway could constitute "negligent operation" of a motor vehicle within the meaning of the statute. The court reasoned: "If a person drove an automobile down a dusty road in such a manner that the dust raised obscured the vision of a motorist who followed him and the driver of the following vehicle was injured because he ran off of the road because of obscured vision, it would seem that the driver of the second vehicle was injured because of the negligent operation of the first vehicle." (*Bright* v. *East Side Mosquito etc. Dist.*, *supra*, 168 Cal.App.2d 7, 14; see also *Marshall* v. *County of Los Angeles* (1955) 131 Cal.App.2d 812, 814 [281 P.2d 544] [tilting the bed of a dump truck in order to dislodge its

cargo constitutes "operation" of the vehicle]; and *Goody* v. *City of El Cajon* (1961) 196 Cal.App.2d 6, 9 [16 Cal.Rptr. 254] [police officer "operated" vehicle when he entered plaintiff's truck and raced the motor to check the sound of the truck muffler, causing the truck to jolt forward approximately six feet, striking plaintiff].)

In *Colapinto* v. *County of Riverside* (1991) 230 Cal.App.3d 147 [281 Cal.Rptr. 191], the Court of Appeal held that Vehicle Code section 17001 did not apply when firefighters used a forklift to open a large service entry door, and the resulting influx of air allegedly fueled a small fire into a roaring blaze that destroyed the building. The Court of Appeal stated: "Colapinto was actually asserting that the property loss resulted from the manner the firefighters chose to fight the fire, by opening a large door and other 'inept' actions, rather than from the negligent or wrongful operation of a motor vehicle." (230 Cal.App.3d at p. 151.) The court held: "Vehicle Code section 17001 does not apply in this case where the motor vehicle was used as a method to fight a fire . . . ." (*Id.* at p. 153.)

Under the foregoing authorities, it is clear that plaintiff's injuries were not caused by the negligent operation of a motor vehicle within the meaning of Vehicle Code section 17001. Plaintiff did not allege that defendants drove or otherwise operated the vehicle in a negligent fashion. Rather, plaintiff alleged that defendants negligently failed to provide a secure vehicle or to properly restrain and supervise plaintiff—not that they negligently operated a motor vehicle. Accordingly, Vehicle Code section 17001 does not apply.

Plaintiff relies heavily upon the decision in *Duarte* v. *City of San Jose* (1980) 100 Cal.App.3d 648 [161 Cal.Rptr. 140]. In that case, a police officer arrested a suspect for driving under the influence of alcohol and left him, unhandcuffed and unattended, in the backseat of a police vehicle with the engine running. The suspect entered the driver's seat and sped off, initiating a high-speed chase that ended when the suspect lost control of the vehicle and struck the plaintiff. The plaintiff alleged the city was liable under Vehicle Code section 17001, because police officers it employed "negligently operated vehicles both in leaving one vehicle unattended with [the suspect] inside, and then in driving other vehicles in high speed pursuit." (100 Cal.App.3d at p. 656.) In holding that Vehicle Code section 17001 applied in these circumstances, the Court of Appeal reasoned that the action of law enforcement officers in leaving the suspect unrestrained and unattended in the backseat of a police vehicle, with the motor running, constituted operation of the vehicle within the meaning of the statute. (100 Cal.App.3d at p. 658.) For the reasons reflected in the foregoing discussion, we disapprove of the decision in *Duarte* to the extent it can be read to hold that the failure

adequately to restrain a person who is in custody and being transported in a motor vehicle constitutes, in itself, negligent operation of the motor vehicle within the meaning of Vehicle Code section 17001.

## V

For the foregoing reasons, the judgment of the Court of Appeal is affirmed.

Lucas, C. J., Kennard, J., Baxter, J., Werdegar, J., and Arabian, J.,* concurred.

**MOSK, J.**—I dissent.

Government Code section 845.8 provides that public entities and employees are immune from liability for injuries "caused by" an escaping prisoner or arrestee. In the majority opinion he has authored for the court in this case Justice George adopts the view he expressed in his dissenting opinion in *Thomas* v. *City of Richmond* (1995) 9 Cal.4th 1154, 1169 [40 Cal.Rptr.2d 442, 892 P.2d 1185] (hereafter *Thomas*), i.e., that as used in section 845.8[1] the phrase "caused by" includes "caused to" (9 Cal.4th at pp. 1175-1176, fn. 5), and hence that the statute applies to self-inflicted injuries suffered by fugitives (*id.* at p. 1175).

I adhere, rather, to the view I expressed in my concurring opinion in the same case (9 Cal.4th at p. 1165), i.e., that as used in section 845.8 the phrase "caused by" does *not* include "caused to," and hence that the Legislature did not intend the statute to apply to such self-inflicted injuries. I based that conclusion on the following reasoning (adapted here to the facts of this case):

"Our task is to determine the intent of the Legislature in enacting the statute. 'To determine the intent of legislation, we first consult the words themselves, giving them their usual and ordinary meaning. [Citations.] When " 'statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it.' " [Citations.]' (*DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140].)

"Here the Legislature provided that section 845.8 applies to injuries *caused by* escapees or persons resisting arrest. Giving the emphasized words

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

[1]All unlabeled statutory references are to the Government Code.

their usual and ordinary meaning, we see that the evident intent of the statute is to relieve the government of liability in the not infrequent situation in which an escapee or person resisting arrest negligently or intentionally injures a third party who gets in his way. (See, e.g., *City of Sacramento* v. *Superior Court* (1982) 131 Cal.App.3d 395 [182 Cal.Rptr. 443].) The case at bar, however, presents a different and more uncommon scenario: the complaint alleges that it was [plaintiff herself who was injured when she fell from the train]. Thus the injury was not 'caused by' the [escapee] but 'caused to' [her]; it is plaintiff, after all, [whose legs were amputated].

"Nor can it be argued that here the injury was somehow 'caused by' plaintiff because [s]he ran away [from the persons transporting her]. We cannot ascribe so strained a meaning to the Legislature. While it is true that occasionally an injury may be caused both by and to the same person (i.e., a self-inflicted wound), in the vast majority of cases an injury that is 'caused by' one person is 'caused to' another: the entire law of torts has developed in response to such injuries. The Legislature, of course, legislates for the generality of cases; if it intends its words to have a special meaning, it says so. Section 845.8 does not.[2]

"The argument also proves too much. In cases in which a public entity is held liable when a third party is wrongfully injured by a police officer in pursuit of a fleeing suspect (e.g., *Brummett* v. *County of Sacramento* (1978) 21 Cal.3d 880 [148 Cal.Rptr. 361, 582 P.2d 952, 4 A.L.R.4th 858]), that suspect could likewise be said to have 'caused' the pursuit by failing to submit to police authority. Yet no one contends that section 845.8 would apply to such cases.

"Most important, the Tort Claims Act shows on its face that the Legislature was well aware of the distinction between the ordinary meanings of 'caused by' and 'caused to.' It is 'a cardinal rule of statutory construction' that ' "every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect." ' (*Landrum* v. *Superior Court* (1981) 30 Cal.3d 1, 14 [177 Cal.Rptr. 325, 634 P.2d 352]; accord, *People* v. *Hull* (1991) 1 Cal.4th 266, 272 [2 Cal.Rptr.2d 526, 820 P.2d 1036]; *Nickelsberg* v. *Workers' Comp. Appeals Bd.* (1991) 54 Cal.3d 288, 298 [285 Cal.Rptr. 86, 814 P.2d 1328].) 'Where reasonably

[2]In any event, there appears to have been no need for the Legislature to provide a special statutory immunity for cases like the present. If an escapee or person resisting arrest were so negligent that he could be found to be a proximate cause of his own injury, ordinary principles of comparative fault would be sufficient to absolve the public entity from liability for that part of the injury 'caused by' his conduct." [Proximate cause and apportionment of damages, however, are factual questions to be resolved by trial, not as here by motion for summary judgment.]

possible, we avoid statutory constructions that render particular provisions superfluous or unnecessary.' (*Dix* v. *Superior Court* (1991) 53 Cal.3d 442, 459 [279 Cal.Rptr. 834, 807 P.2d 1063], and cases cited.)

"No less than three other statutes in the same chapter of the Tort Claims Act as section 845.8 (ch. 3, defining liabilities and immunities for 'Police and Correctional Activities') expressly speak of injuries that are *both* 'caused by' *and* 'caused to' the class of persons in question. Thus section 844.6, subdivision (a), declares that a public entity is not liable for '(1) An injury proximately *caused by* any prisoner. [¶] (2) An injury *to* any prisoner.' Again, section 854.8, subdivision (a), declares that a public entity is not liable for '(1) An injury proximately *caused by* a patient of a mental institution. [¶] (2) An injury *to* an inpatient of a mental institution.' Finally, section 856.2, subdivision (a), declares that neither a public entity nor a public employee is liable for '(1) An injury *caused by* an escaping or escaped person who has been confined for mental illness or addiction. [¶] (2) An injury *to*, or the wrongful death of, an escaping or escaped person who has been confined for mental illness or addiction.' (All italics added.) The Legislature obviously knows how to draw this simple distinction.

"Indeed, when the Legislature amended the last-quoted statute to add the reference to injuries 'caused to' an escaping mental patient, it also amended *in the same bill* the statute now in issue (§ 845.8), but did not add similar language thereto. Thus as originally enacted in 1963 section 856.2 provided immunity only for injuries 'caused by' an escaping mental patient. In its 1970 recommendations to the Legislature the Law Revision Commission emphasized the discrepancy: 'Government Code section 856.2 presently confers immunity only as to injuries *caused by* an escaping or escaped mental patient. Injuries *sustained by* the escapee are not covered.' (Recommendations Relating to Sovereign Immunity, No. 10, Revisions of the Governmental Liability Act (Dec. 1969) 9 Cal. Law Revision Com. Rep. (1969) p. 827, italics in original.) The commission recommended that section 856.2 be amended to extend the immunity to injuries 'caused *to*' escaping mental patients, and the Legislature promptly did so. (Stats. 1970, ch. 1099, § 16, p. 1960.) In another section of the same bill, however, the Legislature also amended the statute now in issue, section 845.8, to immunize injuries 'caused by' escaping arrestees or persons resisting arrest, but did not similarly extend the immunity to injuries 'caused to' such persons.

"Applying the cardinal rule of statutory construction cited above, we see that in order to harmonize the wording of these closely related statutes we must infer that the Legislature did not intend section 845.8 to immunize public entities and employees for injuries 'caused to' escaping prisoners or

arrestees or persons resisting arrest; to do otherwise would render superfluous the express references in the three companion statutes to injuries 'caused to' the classes of persons there in question.

"The distinctions thus drawn by the Legislature, moreover, are eminently reasonable. It makes sense for the Legislature to be concerned about public liability for injuries caused *to* prison inmates (§ 844.6) and *to* mental patients (§§ 854.8, 856.2), because the risk of such injuries is substantial. It is a fact of life that under contemporary prison conditions inmates run significant risks of suffering intentional injury at the hands of other inmates and unintentional injury by understaffed or overworked prison personnel. It is also a fact of life that because of their impaired faculties mental patients run significant risks of unintentionally hurting themselves or each other, and even of intentionally hurting themselves unless restrained. By contrast, escapees and persons resisting arrest do not run such risks, and injuries caused *to* them are a much smaller threat to public liability than injuries caused *by* them. It is therefore to be expected that the statute immunizing public entities for their acts—section 845.8—speaks only of the latter kind of injury, as distinguished from the statutes involving prison inmates and mental patients." (*Thomas, supra,* 9 Cal.4th 1154, 1166-1169.)

The majority's arguments to the contrary are not persuasive. First, whether it would have a "chilling effect" (maj. opn., *ante,* at p. 920) on custodial officers to deny immunity in these circumstances, and whether it would "make little sense" to deny recovery to an "innocent bystander" while allowing it to persons in the class of this plaintiff (*ibid.*), are essentially questions of policy respecting the proper scope of the immunity granted by statute. These are questions for the Legislature, not for this court. They do not undermine the plain meaning of the words that the Legislature used in section 845.8.

Equally unconvincing is the majority's effort to explain away the stark fact that, as discussed above, in three closely related statutes the Legislature has expressly provided for immunity for injuries that are *both* "caused by" *and* "caused to" a specific class of persons. (§§ 844.6, subd. (a), 854.8, subd. (a), & 856.2, subd. (a).) The majority assert (maj. opn., *ante,* at p. 921) that the effect of these provisions is to broaden the immunity to apply to injuries caused to the escapee "*by the government or a third party.*" This is true, but it is not their only effect: they also extend the immunity to self-inflicted injuries. As explained above, in the case of at least two of these statutes the class of persons addressed by the Legislature—i.e., inpatients of mental institutions and persons otherwise confined for mental illness or addiction —is particularly susceptible to injuries that are intentionally or unintentionally self-inflicted. The majority go on to claim that the Legislature's express

reference in such statutes to injuries "caused to" such persons was "not necessary" to achieve immunity for self-inflicted injuries because such immunity "*already is provided* by the provision in each of these statutes concerning injuries 'caused by' the escaped person." (*Ibid.*, italics added.) This reasoning obviously begs the question at issue.

Nor is plaintiff's position "inconsistent." (Maj. opn., *ante*, at p. 921.) The majority do not identify *where* plaintiff "interprets the phrase 'an injury to' an escaped person to include an injury that is 'caused by' that person" (*ibid.*), and I find no such "interpretation" in the record. But even if plaintiff so "interprets" that phrase, the phrase is not in the statute that we are required to construe. The statute speaks only of injuries "caused by" escaped persons.

The majority (maj. opn., *ante*, at pp. 922-923) next dismiss two arguments from legislative history. I do not rely on the first (a quotation from a legislative "staff analysis"). But I found the second persuasive in *Thomas*, and I do so here as well. That argument proceeds from the fact—discussed in detail above—that when the Legislature amended section 856.2 in 1970 to add the reference to injuries "caused to" an escaping mental patient, it did not add similar language to section 845.8 even though it amended the same statute in other ways *in the same bill*. In reply, the majority say only that the Legislature's decision not to similarly extend the immunity of section 845.8 injuries to "caused to" prisoners "does not reflect an intent to restrict the immunity already provided for injuries 'caused by' such prisoners, *including injuries caused by escaping prisoners to themselves*." (Maj. opn., *ante*, at p. 922, italics added.) As the italicized words reveal, the argument again begs the question. It certainly does not explain this aspect of the legislative history.

As noted above in my quotation from *Thomas*, when the Legislature amended the immunity statutes in 1970 it was acting in direct compliance with a 1969 recommendation by the Law Revision Commission that emphasized the discrepancy between "caused by" and "caused to" in this context: to reiterate, the commission stressed that "Government Code section 856.2 presently confers immunity only as to injuries *caused by* an escaping or escaped mental patient. Injuries *sustained by* the escapee are not covered." (Recommendations Relating to Sovereign Immunity, No. 10, Revisions of the Governmental Liability Act (Dec. 1969) 9 Cal. Law Revision Com. Rep. (1969) p. 827, italics in original (Recommendations).) The majority ignore this plain expression of the distinction by the very body that proposed the language in question.

Instead, the majority address only the portion of the cited recommendation in which the Law Revision Commission explains the purpose of its proposed

amendment to section 856.2. But the majority's attempt to evade the impact of the commission's reasoning is, at best, disingenuous. The stated purpose of the commission's proposed amendment to section 856.2 was to extend the immunity of that statute to liability for injuries "sustained by an escaping or escaped mental patient." (Recommendations, *supra*, p. 827.) The majority now assert (maj. opn., *ante*, at p. 923) that the same purpose "does not apply to injuries suffered by escaped prisoners." But no one says it does. The relevance of the Law Revision Commission's explanation is *not* to show that a similar amendment to section 845.8 was likewise intended to "avoid the result reached in other states" (maj. opn., *ante*, at p. 923) with respect to escaped prisoners, because the Legislature has never adopted such an amendment. And that is precisely the point: the relevance of the commission's explanation is to show that *in the view of the drafters of this entire legislative scheme*—the Law Revision Commission—injuries that are "sustained by" a class of persons are "not covered" by a statute that confers immunity "only as to injuries caused by" that class, and hence that if such injuries are to be covered it will be necessary to "revise" the statute to expressly so provide. (Recommendations, *supra*, p. 827, italics deleted.)[3] It follows that for the immunity of section 845.8 to cover injuries sustained by escaping prisoners it will likewise require an amendment of that statute by the Legislature, not by this court.

For all these reasons I conclude that section 845.8 is inapplicable to the case at bar and the Court of Appeal erred in affirming the summary judgment for defendants on the ground of the immunity provided in that statute.

Despite their holding that the immunity of section 845.8 applies to this case, the majority are compelled to address plaintiff's contention that defendants are nevertheless liable under Vehicle Code section 17001, which imposes liability on a public entity for injuries caused by a negligent or wrongful act "in the operation of any motor vehicle" by an employee of the public entity in the scope of his employment. This is because, contrary to

---

[3]To dispel any doubts about the matter I quote the Law Revision Commission's recommendation in its entirety: "Government Code Section 856.2 presently confers immunity only as to injuries *caused by* an escaping or escaped mental patient. Injuries *sustained by* the escapee are not covered. Although certain other jurisdictions imposed liability where a mental patient escapes and is injured because of his inability to cope with ordinary risks, the Commission believes that such liability is inconsistent with the California scheme. Accordingly, Section 856.2 should be extended to confer immunity for injuries—fatal or nonfatal—sustained by an escaping or escaped mental patient. This revision would be consistent with the rationale of Section 856.2 that the public entity should not be responsible for the conduct of a mental patient who has escaped or is attempting to escape and with the policies behind Section 854.8." (Recommendations, *supra*, p. 827, italics in original, fn. omitted.)

Justice George's dissenting opinion in *Thomas* (9 Cal.4th at pp. 1169-1174), the majority in that case held that ". . . Government Code section 845.8 does *not* provide immunity to public entities for liability that is predicated on Vehicle Code section 17001." (*Id.* at p. 1165, italics added.)

On this issue the majority now conclude as a matter of law (maj. opn., *ante*, at p. 925) that plaintiff's injuries "were not caused by the negligent operation of a motor vehicle within the meaning of Vehicle Code section 17001." But the majority's discussion of the point is unpersuasive. They begin (*id.* at p. 923) by asserting conclusorily that the alleged negligent conduct of defendants—in failing to provide a secure vehicle, or to restrain plaintiff adequately, or to seat one of the employees next to plaintiff—"does not constitute" negligent conduct within the meaning of Vehicle Code section 17001. We look in vain for a reasoned analysis leading to that conclusion. Instead, the majority say only (maj. opn., *ante*, at p. 923.) that it is "not sufficient" that a motor vehicle somehow be involved in the events leading to the injury; rather, "The injury must be proximately caused by the negligent 'operation of a motor vehicle.' " The latter assertion, however, merely restates the words of the statute. Repetition is not an explanation. Again the majority beg the question.

Next the majority review (maj. opn., *ante*, at pp. 923-925) a few selected cases applying Vehicle Code section 17001 or its predecessors; but each is distinguishable on its facts and its quoted reasoning is in effect no less conclusory than that of the majority here.

The only case in point is *Duarte* v. *City of San Jose* (1980) 100 Cal.App.3d 648 [161 Cal.Rptr. 140], *which supports plaintiff.* There a city police officer arrested a suspect for drunk driving and placed him, unhandcuffed and unattended, in the backseat of the police car with the motor running. While the officer assisted a fellow officer in moving the suspect's car, the suspect entered the driver's seat of the police car and sped away. Police cars followed in a high-speed chase that ended when the suspect struck and injured the plaintiff. In holding that the plaintiff could state a cause of action for city liability under Vehicle Code section 17001, the Court of Appeal reasoned in part (100 Cal.App.3d at pp. 657-658): "to be in operation within the meaning of section 17001, the vehicle must be in a 'state of being at work' or 'in the active exercise of some specific function.' (See *Marshall* v. *County of Los Angeles* (1955) 131 Cal.App.2d 812, 814 [281 P.2d 544] [construing Veh. Code, § 400, predecessor of § 17001].) However, a vehicle need not be moving to be in operation within the meaning of the statute. (See e.g., *Reed* v. *City of San Diego* (1947) 77 Cal.App.2d 860, 863 [177 P.2d 21]

[police car temporarily parked at night partially on highway with headlights dimmed].)

"One function of a police vehicle is to transport arrested persons to jail. Here the arrested man had been placed in the rear of the car. Its motor was apparently running, which suggests that the officer was about to transport [the suspect] when he was interrupted by his colleague's difficulty with [the suspect's] car. Under the circumstances, we conclude that the car was 'in a state of being at work' and therefore in operation within the meaning of the statute."

In the case at bar it is undisputed that the car in question was an official San Mateo County vehicle being operated by San Mateo County juvenile hall employees for the sole purpose of transporting a ward of the San Mateo juvenile court who was being returned to custody. Although the car was not moving at the time that the ward fled, its motor was running and it was only momentarily stopped at a red traffic signal. As in *Duarte*, accordingly, "the car was 'in a state of being at work' and therefore in operation within the meaning of the statute." (100 Cal.App.3d at p. 658.)

Rather than meeting *Duarte* on its own terms, the majority simply disapprove the decision "For the reasons reflected in the foregoing discussion" (maj. opn., *ante*, at p. 925). As we have seen, however, the majority in fact give no such reasons. The majority thus disapprove *Duarte* not because they must, but simply because they can. A published, unanimous decision of the Court of Appeal that has been followed by other courts deserves more. Indeed, in *Thomas* the majority of this court held after a lengthy analysis that we have *no power* to disapprove *Duarte* to the extent it holds that liability under Vehicle Code section 17001 trumps immunity under section 845.8: we concluded that if *Duarte* and its progeny are to be overruled in that regard, "it is up to the Legislature, and not the courts, to do so." (9 Cal.4th at p. 1165.)

On the issue now before us *Duarte* squarely supports plaintiff's construction of Vehicle Code section 17001. Because the majority have failed to demonstrate by a reasoned analysis that *Duarte* is wrong—by focusing, for example, on the history and purpose of the statute, the evil sought to be remedied, and the role of the section in the overall statutory scheme (see *People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1008 [239 Cal.Rptr. 656, 741 P.2d 154], and cases cited)—we should follow *Duarte* on this point as well.

Finally, the Court of Appeal declined to reach the issue whether the summary judgment should also be affirmed on the ground of the immunity

provided in section 846, and I would therefore remand the matter with directions to address that issue.